## County of Lancaster *versus* Mishler.

1. In an action by a coroner against a county to recover his fees for the making of an inquest, his inquisition upon the body of the deceased, signed by his physician and signed and sealed by himself and his jury of six, is admissible in evidence, even though the paper has never been returned to any court, and is not marked filed, or recorded in any book kept by the coroner for that purpose.

2. Where a coroner makes an inquest, the presumption is that he has acted in good faith and on sufficient cause. In a suit by him against the county, however, to recover his fees, this presumption is not conclusive. Evidence is admissible to show that he acted in bad faith and knowingly without sufficient cause or reason.

May 17th 1882, before Sharswood, C. J., Mercur, Gordon, Paxson, Trunkey, Sterrett and Green, JJ.

Error to the Court of Common Pleas of *Lancaster county :* Of January Term 1882, No. 139.

Assumpsit, by Isaac Mishler, coroner, against the county of Lancaster, to recover his fees as coroner and costs incurred on an inquest held by him in his official capacity upon the body of one John Philip Hahn. Plea, non assumpsit.

On the trial, before Patterson, J., plaintiff offered in evidence his inquisition upon the body of the said Hahn, signed by the coroner's physician, and sealed by the coroner and his jury of six. Objected to, on the ground that it did not appear that the paper had ever been returned to any court, or marked filed, or recorded in any book or record kept by the coroner for that purpose. Objection overruled, and the paper admitted. Exception. The finding of the inquest was "that the said John Philip Hahn came to his death from a *pareletick* stroke."

The defendant offered to prove, by the son-in-law of deceased, by his attending physician, and by numerous other witnesses, that at the time of his death the said Hahn was seventy-eight years of age, that he had been sick and attended by his regular physician for some days immediately preceding his death ; that he died in his own house, surrounded by members of his family ; that his death was a natural one ; that there was nothing suspicious, sudden or extraordinary ; and that all these facts were communicated to the coroner before he summoned his inquest. Offers objected to ; objections sustained, and offers excluded ; exceptions.

The county commissioners, to whom the plaintiff presented his bill for holding said inquest, refused to pay the same, whereupon this suit was begun before a justice of the peace, and was subsequently, after judgment for plaintiff, removed to the Common Pleas by appeal.

[County of Lancaster *v.* Mishler.]

The court charged the jury, inter alia, as follows:

"The defence contended that the coroner's inquisition is defective and incomplete in form, and could not be admitted in evidence; but if the holding the inquest was a judicial act, can that officer's record be attacked collaterally, or can the incorrect or informal manner in which he may have performed this judicial act be questioned in this suit? We instruct you that that cannot be done; his record nor the manner or motive in which the plaintiff performed that judicial act cannot be even inquired into collaterally. . . . . The defendant maintained that, from information received, there was no need or necessity for the holding of an inquest in the present instance; that the circumstances attending the sickness and decease of the subject were not of a violent character, and therefore the officer was not warranted in holding an inquisition at all. The question then arises, is a defence of that character permissible in the present action? We instruct you that it is not. . . . . But we do intend to say, and so instruct you, that the office of coroner is a judicial office; that the holding of an inquest is a judicial inquiry, authorized by the laws of the state; and that, therefore, in the suit now trying, the defence pleaded cannot be admitted in evidence and cannot avail the defendant. . . . . The evidence offered by the defendant and which we have ruled out, could not be received and go to you, the jury—we say it would not be relevant and was not relevant, the question determining this issue being almost a pure question of law.

"Under the law then, as we have presented it, you will see that the defendant, the county of Lancaster, in this suit had an ample remedy, provided the plaintiff, as is alleged, improperly held this inquest, and took the inquisition not in due form, had it employed the writ of certiorari—the proper process in the premises. The law of the case, then being, we think, as presented in our charge, we must instruct you to render your verdict for the plaintiff."

Verdict and judgment for the plaintiff, for $10.49, whereupon the defendant took this writ of error, assigning for error the admission in evidence of the said inquest, the rejection of the defendant's offers of evidence, and the portions of the charge above quoted.

*J. Hay Brown* and *Hugh R. Fulton,* for the plaintiff in error.—Under the stat. 3 Henry VII., ch. 1, which is in force in Pennsylvania (Robert's Digest, pp. 6, 102, 104, 105), sudden deaths which are within the province of the coroner to inquire of are: (1) Ex visitatione Dei; (2) Per infortunium; (3) Felo de se; (4) By the hand of another, known or not known. In

4 OUTERBRIDGE.—40

cases of natural death, in the absence of suspicious circumstances, the coroner has no right to hold an inquest, and if one is held, it is invalid, and the coroner is not entitled to his fees. That the facts did not warrant an inquest may be shown by parol testimony: Queen *v.* Justices, 7 Ell. & Bl. 805, 811; Lancaster Co. *v.* Dern, 2 Grant 262; Northampton Co. *v.* Innes, 2 Casey 156; Crosby's Case, 3 Pitts. Rep. 425; Ex parte Shultz, 6 Wh. 269.

The inquest, when lawfully taken, must be certified and returned by the coroner to the proper court: Stat. 4 Edw. IV., 1 Black. Comm. 349; Coroner's Case, 32 Leg. Int. 142; Act of May 27th 1841, Purd. Dig. 873, P. L. 404. Where the inquest is not so returned, no fees are due.

*J. W. Johnson,* for the defendant in error.—The inquest was presented to the county commissioners, in accordance with a long established practice in Lancaster county. It is only where inquests are held by justices of the peace, under the act of 1841, that return must be made to the quarter sessions.

The office of coroner being a judicial office, all his acts are presumed to be regular, and cannot be attacked collaterally: Allegheny Co. *v.* Watt, 3 Barr 462; Lancaster Co. *v.* Dern, 2 Grant 262; Northampton Co. *v.* Innes, 2 Casey 156. But, had the matters been true as alleged, the remedy by certiorari could have been resorted to, when witnesses might have been heard, and if the inquisition had been improperly held it might have been set aside, which would have defeated any claim for compensation.

[Sharswood, C. J.—A certiorari would only bring up the inquest; you could not go into parol evidence on the merits.]

Mr. Justice Mercur delivered the opinion of the court, October 4th 1882.

This is a suit by the coroner against the county, for his fees and costs in holding an inquest on the body of one John Philip Hahn.

In holding an inquest, the coroner acts in a judicial capacity. If he has jurisdiction in the particular case, and makes a sufficient record of the inquest, the regularity of the finding cannot be impeached in a collateral proceeding. We see no such defect in this record, nor in the manner in which it was kept as to prevent its being admitted in evidence.

It is the duty of a coroner to hold an inquest *super visum corporis,* where he has cause to suspect the deceased was feloniously destroyed: County of Northampton *v.* Innes, 2 Casey 156; or when his death was caused by violence: Commonwealth *v.* Harman, 4 Barr 269. Whenever he holds

[County of Lancaster *v.* Mishler.]

one the presumption is that he acted in good faith, and on sufficient cause. The question now presented is, whether in a suit by him for his services, that presumption is conclusive against the county, or may it be overthrown by evidence?

Here the offers were to prove by several witnesses, in substance, that in holding this inquest, the coroner did not act in good faith ; but knowingly acted without any sufficient cause or reason ; that Hahn was nearly fourscore years old ; that he had been ill for some days and attended by Dr. Atlee, a regular practicing physician of the city of Lancaster ; that he died a natural death in his own house surrounded by his family ; that his death was a natural one ; that there was nothing suspicious, sudden, or extraordinary connected with it, and that all these facts were communicated to the coroner before he summoned the inquest.

The learned judge thought, inasmuch as the office of coroner is a judicial office, and the holding of an inquest a judicial inquiry, therefore this evidence was inadmissible. The duty of a coroner to hold an inquest rests on sound reason, on that reason which is the life of the law. It is not a power to be exercised capriciously and arbitrarily against all reason. The object of an inquest is to seek information, and obtain and secure evidence, in case of death by violence or other undue means. If there be reasonable ground to suspect it was so caused, it becomes the duty of the coroner to act. If he has no ground for suspecting that the death was not a natural one, it is a perversion of the whole spirit of the law to compel the county to pay him for such services. In this case the inquest found the decedent came to his death " from a paraletic stroke." Nay, more, if under the facts offered in evidence a coroner may hold an inquest, he may in his discretion at the expense of the county order a *post mortem* examination, whereby those bound to the deceased by the nearest and most tender ties may have their feeling lacerated, in every case of natural death. The idea is preposterous and abhorrent to all the finer emotions of human nature. It was error to reject the evidence. If he had sufficient cause to justify his action, he may still show it. If he had not, there is no good reason why the county should pay for unnecessary and meddlesome services. The county was no party to the inquest, and this is the first opportunity it has had of being heard. The other specifications are not sustained.

Judgment reversed and a venire facias de novo awarded.