## Commonwealth ex rel. Kelley v. Warden of Jail.

*Coroners—Inquest—Witness—Contempt—Refusal to appear.*

1. A coroner, when holding an inquest, is acting as a judicial officer, and as such has the power to require the attendance of witnesses and to require them to give testimony.

2. If a witness refuses to attend when subpœnaed, or contumaciously refuses to testify, he is guilty of contempt.

3. While the coroner cannot punish him for such contempt, he may commit the witness to answer therefor in the Court of Quarter Sessions.

*Evidence—Witness—Privilege—Crime.*

4. The privilege of a witness to decline to give evidence against himself embraces both the right to refuse to answer a direct question whether he has done an act which would amount to a criminal offence, and also the right to refuse to testify to a fact which would be circumstantial evidence of a crime or a link in a chain of evidence tending to fasten crime upon him.

*Habeas corpus—Judgment of judicial officer—Review.*

5. *Habeas corpus* cannot be used for the review of the judgment of a judicial officer when the action complained of is not void upon its face.

*Habeas corpus.* C. P. Washington Co., Feb. T., 1926, No. 237.

*Robert E. Burnside*, for relator.

*Howard W. Hughes*, District Attorney, contra.

BROWNSON, P. J.—When this writ of *habeas corpus* was allowed, the relator was held by the warden of the jail upon a commitment issued by the coroner of the county. It appears that relator was called as a witness at a coroner's inquest held for the purpose of investigating the death of Harry Reed, and that, upon his refusal to answer a certain question, the coroner committed him to answer a charge of contempt.

The authorities are to the effect that when holding an inquest the coroner is acting as a judicial officer, and as such has the power to require the attendance of witnesses and to require them to give testimony, and that if they refuse to attend when subpœnaed, or contumaciously refuse to testify when present, such conduct is a contempt; and that, while the coroner, not being a court of record, does not possess the power himself to punish such contempt, he does have authority to commit the witness to answer therefor in the Court of Quarter Sessions, it being there indictable as an obstruction of the course of justice: Com. *v.* Higgins, 5 Kulp, 269; Brooker *v.* Com., 12 S. & R. 175. The authority of the coroner to require a witness to testify is, however, necessarily subject to the constitutional right of the witness to refuse to give testimony that is self-incriminating. Section 9 of article I of the Constitution of our State has been interpreted liberally as applying and extending protection not only to persons who are on trial upon a criminal charge, but also to witnesses in all sorts of cases: Myers and Brei *v.* Com., 83 Pa. Superior Ct. 383, 388.

The facts in the present case were stated at the hearing to be about as follows: The relator was being interrogated as to conversations which he had with Beatrice Reed, the widow of the deceased, for the purpose of ascertaining whether in such conversations any statements were made by Mrs. Reed which would throw light upon the question who killed her husband, and, in answer to inquiries upon this subject, he testified concerning statements made by her in conversations which he had with her. He was then asked to give the place where he met her, and, under advice of his counsel, refused to answer this question upon the ground that it might incriminate him; whereupon the coroner issued this commitment.

Commonwealth ex rel. Kelley v. Warden of Jail.

The privilege of a witness to decline to give evidence against himself is not confined to the right to refuse to answer the direct question whether he has done an act which would amount to a criminal offence; it embraces also the right to refuse to testify to a fact which would be circumstantial evidence of a crime, or a link in a chain of evidence tending to fasten a crime upon him. This is the effect of all the authorities, and in the Myers and Brei case, *supra*, it was held that a witness was within his rights in refusing to answer an inquiry as to his whereabouts at a particular time, when a truthful answer to that question might furnish a material link in a chain of evidence to support a prosecution against him for a crime. This relator was asked to tell where he had met a woman who was the wife of another man. Suppose, for example, that, in case he were to answer that question truthfully, he would have to admit that he met her in an assignation house: such an admission would certainly be evidence tending to convict him of an indictable offence. The relator's counsel, therefore, claims that he was within his rights in refusing to answer this question and that the coroner was in error in committing him to be tried for contempt, and relies upon the principles laid down in the Myers and Brei case, *supra*, and upon the specific decision applying them which was therein made as ruling the present case in the relator's favor.

But the serious question that arises is with respect to our jurisdiction in this *habeas corpus* proceeding, to review the action of the coroner in holding the relator to answer the charge of contempt. Where one is committed for refusing to answer questions before a legislative commission or other non-judicial body, *habeas corpus* may be the appropriate and only method of relief: Emery's Case, 107 Mass. 172; Myers and Brei v. Com., *supra*. But the coroner is, when holding an inquest, a judicial officer: Com. v. Higgins, 5 Kulp, 269, 271; Watson v. Beaver County, 9 Pa. C. C. Reps. 495; Lancaster County v. Mishler, 100 Pa. 624, 626; and the rule appears to be settled in Pennsylvania that the writ of *habeas corpus* cannot be used for the review of the judgment of such an officer when the action complained of is not void upon its face, Williamson's Case, 26 Pa. 9; Myers and Brei v. Com., 83 Pa. Superior Ct. 383, 386, and this, even in cases where the court has appellate jurisdiction to review such judgment.

It is equally true, however, that the common law writ of *habeas corpus* and the writ of *certiorari* may be used as ancillary to each other, so that where one imprisoned by order of a subordinate tribunal has sued out such *habeas corpus* in a court having supervisory authority over the committing tribunal, a *certiorari* may be issued to bring up the record, to the end that the order complained of may be reviewed and corrected or set aside in relief of the relator: Gosline v. Place, 32 Pa. 520.

But does the Court of Common Pleas have supervisory reviewing jurisdiction over the decisions of the coroner? We have not been referred to any statute or authority conferring or evidencing such a jurisdiction, and the Pennsylvania theory of the office of coroner seems to be that "within his own jurisdiction he is supreme, and he is the sole judge of his action. . . . Of course, he is bound in duty to exercise such discretion wisely. . . . But if he acts unwisely, it is neither in the power of the commissioners nor of the court to rectify such acts:" Weaver v. Northampton County, 2 Lehigh Val. Repr. 408; Woodward on Coroners in Pennsylvania, § 68. It may be that, under the circumstances and for some purposes, a *certiorari* to the coroner may be issued by a court of record, but if so, such writ would bring up merely the inquisition, and could not be used to review rulings and decisions made by the coroner in the course of his hearings: Ralston's Petition, 9 Dist. R. 514; Lan-

Commonwealth v. One Chevrolet Automobile.

caster County v. Mishler, 100 Pa. 624 (remark of Sharswood, C. J., to counsel at page 626). Moreover, there is no provision for making the testimony taken before the coroner a part of the record in a case where the inquest has not made a finding of murder or manslaughter: Edwards v. Gimbel, 202 Pa. 30, 37, 38, and here there has been no finding at all by the coroner's jury, the inquest being not yet completed, and probably it will not be before the approaching sitting of the grand jury.

We do not see that, if we were now to assume to issue a writ of certiorari, this would enlarge the jurisdiction of the Common Pleas, or in any way help the relator. The jurisdiction to determine whether the relator's act constituted a contempt or obstruction of justice would appear to be in the Quarter Sessions, which jurisdiction has already been invoked by the action of the coroner in committing the relator for trial in that court. And in that court he has a remedy: if the facts shall therein appear to be as they now seem to be, he can, in order to obtain an adjudication of their effect, ask that court to direct his acquittal. As he has been released on bail since this writ of habeas corpus was issued, the present question has become one as to whether we should, upon the pending writ, discharge him from any obligation to appear in the Quarter Sessions to answer the charge upon which the coroner committed him. For reasons above indicated, we are of opinion that this court should not make such an order.

And now, Jan. 25, 1926, the application of the relator to be discharged without day is denied, but the costs of this proceeding are directed to be paid by the County of Washington.

From Harry D. Hamilton, Washington, Pa.