COTY et al, Respondents, v. BAUGHMAN et al, Defendants (Westaby, Appellant)

## (210 N. W. 348.)

(File No. 5679.　Opinion filed October 11, 1926.)

1. **Coroners—Instruction Involving Criminal Negligence in Action for Unauthorized Autopsy Held Properly Refused as Not Warranted by Evidence (Laws 1921, c. 143, § 9).**

In action against coroner for unauthorized autopsy of plaintiff's child, that plaintiffs had employed chiropractor when child had tuberculosis did not raise presumption of negligence authorizing instruction relieving coroner from damages for mental suffering if there was evidence of criminal negligence, since chiropractor was not prohibited by Laws 1921, c. 143, § 9, from treating child for bowel trouble.

2. **Coroners.**

Right of coroner to hold inquest is limited by Rev. Code 1919, § 10179, to such persons only as are "supposed to have died by unlawful means." This phrase does not give coroner unlimited, captious, or arbitrary power to hold inquests.

3. **Coroners.**

Evidence in action for unauthorized autopsy showed no ground for supposition that child had died "by unlawful means," and coroner had no authority to perform autopsy.

4. **Coroners—Parent and Child—Consent of Father Alone Held No Defense to Action for Unauthorized Autopsy (Rev. Code 1919, § 200, section 3870, subd. 3, and section 3874, subd. 2).**

In view of Rev. Code 1919, § 3874, subd. 2, imposing duty of burial on nearest of kin, and section 3870, subd. 3, requiring consent to autopsy, consent of father of deceased child alone is insufficient, under section 200, relating to custody and control of child, and hence where both parents were living together within state, coroner could not defend action for unauthorized autopsy on ground that father had consented.

5. **Dead Bodies—Damages—Parents Held Entitled to Recover for Mental Suffering Due to Coroner's Unauthorized Autopsy of Child.**

> Where coroner wrongfully performed autopsy on child, parents were entitled to recover for mental suffering, it being direct, proximate, and natural result of wrongful act, although there was no willful and wanton mutilation of the body.

Note.—See, Headnote, (1), American Key-Numbered Digest, Coroners, Key-No. 23, Dead Bodies, 17 C. J. Sec. 26a (Anno.); (2) Coroners, Key-No. 23, 13 C. J. Sec. 14; (3) Coroners, Key-No. 23, Dead Bodies, 17 C. J. Sec. 26 (Anno); (4) Coroners, Key-No. 23, Dead Bodies 17 C. J. Sec. 19 (Anno); (5) Dead Bodies, Key-No. 9, 17 C. J. Sec. 27.

Liability for damages for performing autopsy, see note in L. R. A. 1918D, 404; 8 R. C. L. 685; 2 R. C. L. Supp. 640; 4 R. C. L. Supp. 568.

Appeal from Circuit Court, Lake County: Hon. L. L. FLEEGER, Judge.

Action by E. L. Coty and another against D. S. Baughman, R. S. Westaby, and others. Action was dismissed as to the other defendants, and judgment was entered against R. S. Westaby. From the judgment and an order denying new trial, R. S. Westaby appeals. Affirmed.

*Ira F. Blewitt,* of Madison, for Appellant.

*Theodore N. Feyder,* of Sioux Falls, and *Clark, Dwinell & Meltzer,* of Sibley, Iowa, for Respondents.

SHERWOOD, J.. This action is brought by the father and mother of Rose Marie Coty to recover damages for an alleged unauthorized autopsy.

The complaint avers in substance that the defendants while practicing medicine and surgery in Madison, S. D., made a dissection of the dead body of Rose Marie Coty without authority of law or permission of plaintiffs and in defiance of plaintiff's instructions, that such dissection of the body of their daughter greatly wounded plaintiff's feelings, caused them great nervous shock, pain, and suffering, and asks for damages in the sum of $20,000.

Defendant R. S. Westaby answered separately and in substance denied all allegations of the complaint not admitted or alleged, and for a further defense averred: That at the time of the autopsy he was the coroner of Lake county and was consulted by decedent's father in regard to obtaining a death certificate

for the child. That no regularly licensed physician had attended the child during its last illness. That claim had been made that the child had died of neglect, and the neglect of the parents had contributed to the death of the child. That it was necessary for defendant as coroner to make such autopsy in order to determine the true cause of death and issue the death certificate, and for the sole purpose of ascertaining the true cause of death and to assist plaintiff in procuring a proper and legal certificate of death the autopsy was made.

The answer of each of the other defendants was in effect that they did not perform the autopsy or have anything to do with it.

At the close of plaintiffs' evidence the action was dismissed as to all the defendants except R. S. Westaby. The trial then proceeded, and the jury returned a verdict against him for $1,500. Motion for new trial was overruled, and from the judgment and order denying a new trial defendant appealed.

It will be observed that the answer of R. S. Westaby alleged "that the neglect of the parents had contributed to the death of the child," and "that claim had been made that the child had died from neglect." No evidence was offered or received at the trial sustaining or tending to sustain either of these allegations, unless the employment of a chiropractor to treat the child while she was suffering from tuberculosis raised a presumption of neglect or showed the parents neglected the child. It is not claimed by appellant that the chiropractic treatment either caused or hastened the death of the child. And there is no evidence in the record to support such a claim. Dr. Allison, one of these defendants, was called when the child first appeared ill and continued to attend her until about the 20th of January, 1922. Some time during his care of the child Dr. Hovde and Dr. Baughman were called in consultation with him. The child's trouble was pronounced tuberculosis by all these doctors. During the child's illness the parents took her to Dr. Spafford at Flandreau for an examination. There is no evidence to show what his diagnosis of the case was. All these doctors were regular practitioners of good repute either in Madison or Flandreau, and the facts above stated were known to Dr. R. S. Westaby before he performed the autopsy. The evidence shows the instructions of the attending physicians were carried

out by the parents, and the sister of Mrs. Coty, a trained nurse, assisted in the patient's care at least quite a portion of the time. Dr. Hovde advised the parents he could do nothing more for the child, Dr. Allison told them he thought the child could not live, and Dr. Baughman offered no advice except to keep on feeding her, before Mrs. Hoge, the chiropractor, was called. She treated the child nearly every other day during the last three weeks of its life for bowel trouble. And it is the undisputed testimony of the mother that the child was suffering from bowel trouble and that the treatments of the chiropractor relieved her.

[1] Appellant calls attention to section 9, c. 143, Session Laws of 1921, which provides among other things:

"Chiropractors shall not be entitled to practice obstetrics, or treat contagious or infectious diseases."

Defendant asked the court to instruct the jury:

"That if they found any facts brought to the knowledge of defendant R. S. Westaby that would lead him to believe as coroner of Lake county that there was an criminal negligence in the care of Rose Marie Coty or facts that led him honestly to believe there was sufficient cause to justify and require him to ascertain the true cause of death of the child, and acting in such good faith he caused the autopsy without unnecessary mutilation of the body or dismemberment or taking away of the parts, and that the autopsy was performed in a skillful manner, then R. S. Westaby would not be liable for more than nominal damages if he acted in good faith on such information, and plaintiffs could not recover any mental damages or damages for mental suffering."

We think this instruction was properly refused. There is nothing in the record to show neglect or criminal negligence, or negligence of any character.

A chiropractor is not prohibited by the statute from treating patients. He is only prohibited from practicing obstetrics and from treating "contagious and infectious diseases." If a tubercular patient developed some other disease for which chiropractic was a recognized therapeutic agency, and which was neither contagious nor infectious, we think a chiropractor might treat the patient for that disease, if done honestly and in good faith, and

not as a mere cover for treating contagious or infectious diseases. In this case the child was suffering from pulmonary tuberculosis. She also developed bowel trouble. There is no question but the chiropractor acted in perfect good faith and treated the child for bowel trouble. We think the employment of the chiropractor under the circumstances here shown raised no presumption and was no evidence of either negligence or neglect.

[2] Appellant contends he had a right to perform this autopsy by virtue of his office of coroner regardless of the consent or objection of the parents. The statute provides the coroner is authorized to hold an inquest "upon the dead bodies of such persons only as are supposed to have died by unlawful means." Section 10179, R. C. 1919.

It will be noticed that the right of the coroner to hold an inquest is limited to such persons only as are supposed to have died by unlawful means. The phrase, "supposed to have died by unlawful means," does not give to the coroner an unlimited, captious, or arbitrary power to hold inquests.

"The duty of a coroner to hold an inquest rests on sound reason, on that reason which is the life of the law. It is not a power to be exercised capriciously and arbitrarily against all reason." County of Lancaster v. Mishler, 100 Pa. 624, 45 Am. Rep. 402; section 3871, and section 3874, subd. 2, R. C. 1919.

[3] In this case it was clear from all the evidence before the coroner that the patient died either from tuberculosis or from bowel trouble. Both of these were natural causes of death. There was no ground on which to base a supposition that the child had died "by unlawful means." The coroner was therefore without authority to perform the autopsy (the autopsy being an integral part of the inquest [sections 10179, 10192, and 3870, R. C. 1919]), unless he was authorized to do so by the "next of kin of a deceased person, being charged by law with the duty of burial." Section 3870, subd. 3, R. C. 1919.

[4] It is provided by section 3874, subd. 2, R. C. 1919, that:

"The duty of burial devolves upon the person or persons in the same degree nearest of kin to the decedent, being of adult age, and within this state, and possessed of sufficient means to defray the necessary expenses."

The duty of burial in this case devolved upon the father and mother alike, each being related to the decedent in the same degree and each being her nearest of kin; and, each being of adult age and residing within this state, and, as far as the record discloses, each were possessed of sufficient means to defray the necessary expenses.

It is admitted that before this autopsy was performed the mother notified the doctor she did not wish it performed, and in reply to such notice the doctor said: "We will go on with the autopsy." The doctor seeks to justify the autopsy by saying the father did not object when he told him he would make the autopsy and by other conduct which he claims amounted to a consent. There is a sharp conflict between the testimony of the doctor and the father on this question, and the jury have found that the parents of the child did not consent to the autopsy. We think the rights of the father and mother are equal in the body of their deceased child, and that the consent of both to an autopsy would be necessary where the father and mother were living together and both were within this state; that section 200, R. C. 1919, by analogy, is applicable to this case.

[5] Appellant further contends that plaintiffs cannot recover for mental anguish unless there was a willful and wanton mutilation of the body of their child. With this we cannot agree. We think that where, as in this case, the wrongful act constituted an infringement of a legal right, mental suffering may be recovered for, if it is the direct, proximate, and natural result of, the wrongful act. Larson v. Chase, 47 Minn. 307, 50 N. W. 238, 14 L. R. A. 85, 28 Am. St. Rep. 370; Woods v. Graham, 140 Minn. 16, 167 N. W. 113. L. R. A. 1918D, 403; Darcy v. Presbyterian Hospital, 137 App. Div. 924, 122 N. Y. S. 1126; Id., 202 N. Y. 259, 95 N. E. 695, Ann. Cas. 1912D, 1238; Burney v. Childrens' Hospital, 169 Mass. 57, 47 N. E. 401, 38 L. R. A. 413, 61 Am. St. Rep. 273; sections 1959, 1960, R. C. 1919. The coroner having no right to perform the autopsy in this case, it was immaterial whether or not the autopsy was performed in a skillful manner.

Our attention is called to section 9909, R. C. 1919, making it necessary that a primary death certificate be made before any burial occurs. It is sufficient to say as to this that it was not made the coroner's duty to furnish the death certificate in this case,

and by the undisputed evidence it clearly appears he was never requested to do so.

If there was no attending physician any person having knowledge of the facts could have obtained a preliminary death certificate by making the proper affidavit before a justice of the peace.

We have examined all the other assignments of error, and they are without merit.

The judgment and order appealed from are affirmed.

DILLON, J., not sitting.