## In re Ross

George J. Vanderslice and William C. Johnston, for exceptants.

E. J. Mullen, contra.

EVANS, P. J., January 23, 1933.—This matter comes before the court on exceptions by taxpayers, protesting and objecting to the court's approving seven bills of the coroner for viewing dead bodies. The clerk presented the bills for approval on November 7, 1932. The same day the taxpayers' exceptions were filed, and on December 19th the coroner's answer was filed. Neither the exceptions nor the answer are sworn to. We will dispose of the matter as though both were sworn to.

The question for determination is: Should the court approve the coroner's bills for viewing the dead bodies? No inquests were held.

The exceptions read as follows:

"1. Because there is no evidence of unlawful violence by another person causing the death of any one of the foregoing decedents.

2. Because there is no evidence that the coroner had cause to suspect that any one of the above decedents was feloniously destroyed.

3. Because there is no ground to suspect that the death of any one of the foregoing decedents was an unnatural or a suspicious one.

4. Because there is nothing in the coroner's report of view in any of the foregoing cases showing that there were suspicious circumstances attending the death of the decedent.

5. Because there is no evidence that the death of any of the foregoing decedents was caused by the commission of any felony, or by undue means, or in an unnatural manner."

There is no dispute that William Ross is the duly elected and qualified coroner of Columbia County or that, acting as such coroner, he performed the services for which compensation is claimed.

On the part of the exceptants, it is contended the court's approval of the bills should be withheld for the following reasons:

1. No inquests were held, and in none of the cases did the coroner certify to the fact that an inquest was not necessary.

2. In none of these cases is there anything in his report to show that the coroner made sufficient inquiry of his informant or that he prosecuted other preliminary investigation sufficient to enable him, prior to the view, to determine whether or not a view was necessary.

3. Death in each of the seven cases for which the coroner claims pay for viewing the dead body resulted from accident, natural cause, or the act of the decedent himself.

4. In none of the reports is it suggested, or even hinted at, that death resulted from unlawful violence or from the unlawful conduct of another.

On the other hand, on the part of the coroner it is contended that the court should approve the bills for the following reasons:

1. In each of the cases he was summoned by a physician, an undertaker, or the district attorney, viewed the bodies, and decided no inquest was necessary.

2. He performed the work in the exercise of his legal discretion and in good faith.

3. The exceptions are not sworn to.

4. The exceptants have offered no proof showing the coroner abused his discretion in viewing the bodies or did not act in good faith.

A careful reading of the coroner's returns discloses that he had no reason to suspect death resulted from criminal misconduct in any of these cases, but rather from heart failure, unavoidable accidents, and the decedent's own negligence:

William T. Snyder, age 62, met his death in an accidental fall from a cherry tree.

George Bertrick, age 7, met his death in an unavoidable motor vehicle accident.

Mary Woznak met her death from natural cause—a heart attack.

William Ferdinand Camp, age 26, broke his neck by jumping from a moving automobile truck.

Donald Hosler, age 2, met his death by drowning.

Joseph Sherwood, age 72, was found dead in the rolling mill yard of the American Car & Foundry Company's plant—a heart attack.

Benjamin Covalski met his death by being accidentally crushed under the automobile truck he had been driving.

The Act of March 30, 1897, P. L. 8, authorizes the payment of fees and mileage to the coroner for viewing a dead body where no inquest is held; and the Act of April 7, 1927, P. L. 168, amending sec. 19 of the Act of March 28, 1814, 6 Sm. L. 228, designates the amount of fees and mileage that should be allowed. Section 1 of the Act of 1897 provides as follows:

"That whenever the coroner shall have been called and views a dead body and decides that no inquest is necessary, he shall certify and return this fact as inquests are now returned; and for such services he shall receive the same fee and mileage as is now allowed by law for such view when followed by an inquest; said fee and mileage to be paid as provided by law where an inquest is held."

Section 1 of rule III of the Rules of the Court of Quarter Sessions of this county, page 207, provides:

"The court will not approve any coroner's or acting coroner's view or inquest unless the report thereof sets forth specifically and in detail at whose instance the same was held, why and how it was held, and the reasons for its propriety or necessity. The court will not direct the payment of the costs of any coroner's or acting coroner's view or inquest until all of the provisions of this rule are strictly complied with."

The coroner complied with neither the statute nor the rule of court. Both are mandatory. In none of the returns does he certify and return "that no inquest is necessary", and in none of them does he state how the view was held.

In a per curiam opinion in Ralston's Petition, 9 Dist R. 514, 515, the Court of Common Pleas of Allegheny County said:

"Some English precedents have been cited, but the difference in effect between proceedings before a coroner there and here is such that these precedents determine very little. We do not understand that the verdict of a coroner's jury in .

this State has, strictly speaking, any legal effect, as it has or had in England. The only object and result of his proceedings is to furnish prompt information which may guide the officers of the law in apprehending and prosecuting those who appear to have been connected with a supposed homicide, and in discovering the evidence by which it may be investigated."

In Miller v. Cambria County, 29 Pa. Superior Ct. 166, 168, Henderson, J., said:

"The authority of a coroner is not to be exercised arbitrarily but with reason and upon sufficient cause. An inquest is held to secure information and develop evidence in case of death resulting from felony or criminal negligence. Where there is reasonable ground to suspect it was so caused, it becomes the duty of the coroner to act: County of Lancaster v. Mishler, 100 Pa. 624. If he has no ground to suspect that the death resulted from criminal misconduct, it is not his duty to act. Where it is apparent that death was caused by disease or by negligence of the deceased or was purely accidental the coroner has no jurisdiction and is not entitled to fees. The 'violence and undue means' which gives jurisdiction to a coroner has reference to unlawful conduct of another from which death resulted. Where it is evident that death did not result from such cause, neither inquest nor a view of the body is necessary. If there are no suspicious circumstances attending the death, the coroner has no duty to perform. He is accountable for the proper exercise of his discretion, and if he act without sufficient cause the county is not liable for his fees."

In County of Lancaster v. Mishler, 100 Pa. 624, 627, a suit brought by the coroner to recover fees for holding an inquest, Mr. Justice Mercur, speaking, for the Supreme Court, said:

"The duty of a coroner to hold an inquest rests on sound reason, on that reason which is the life of the law. It is not a power to be exercised capriciously and arbitrarily against all reason. The object of an inquest is to seek information, and obtain and secure evidence, in case of death by violence or other undue means. If there be reasonable ground to suspect it was so caused, it becomes the duty of the coroner to act. If he has no ground for suspecting that the death was not a natural one, it is a perversion of the whole spirit of the law to compel the county to pay him for such services. In this case the inquest found the decedent came to his death 'from a paraletic stroke.' Nay, more, if under the facts offered in evidence a coroner may hold an inquest, he may in his discretion at the expense of the county order a *post mortem* examination, whereby those bound to the deceased by the nearest and most tender ties may have their feeling lacerated, in every case of natural death. The idea is preposterous and abhorrent to all the finer emotions of human nature. It was error to reject the evidence. If he had sufficient cause to justify his action, he may still show it. If he had not, there is no good reason why the county should pay for unnecessary and meddlesome services."

The coroner's returns on their face clearly indicate that there was no reason or necessity for his viewing the dead bodies. Death had resulted from heart attacks, unavoidable accidents, and the decedents' own negligence. As said by the court in the Mishler case, supra, the authority of a coroner is not to be exercised capriciously and arbitrarily against all reason. The object of an inquest is to seek information, and to obtain and secure evidence in case of death by violence or other undue means. If there be reasonable ground to suspect it was so caused, it becomes the duty of the coroner to act. If he has no ground for suspecting that the death was not a natural one, it is a perversion of the whole spirit of the law to compel the county to pay him for such services; and, as remarked by Judge Henderson of the Superior Court in Miller v. Cambria

704

County, supra: " 'The violence and undue means' which gives jurisdiction to a coroner has reference to unlawful conduct of another from which death resulted. Where it is evident that death did not result from such cause, neither inquest nor a'view of the body is necessary. If there are no suspicious circumstances attending the death, the coroner has no duty to perform . . . if he act without sufficient cause the county is not liable for his fees."

In viewing the bodies in the instant case, the returns disclose that death resulted from heart failure, unavoidable accidents, and in one instance the decedent's own negligence. The coroner therefore was without jurisdiction to view the bodies.

Both the Act of March 30, 1897, and rule III of the rules of the court of quarter sessions of this county defeat the coroner's right to have the court approve his bills. The law does not require a vain thing. Where death occurs from accident, natural causes, or the act of the decedent himself, and there are no suspicious circumstances surrounding the death, the coroner has no duty to perform.

And now, January 23, 1933, for the reasons above given, the exceptions are sustained and the approval of the coroner's bills is withheld.

From R. S. Hemingway, Bloomsburg, Pa.