## Haytock et al. v. Nickel

*David B. Skillman,* for plaintiffs; *Russell C. Mauch,* for defendant.

STEWART, P. J., July 10, 1933.—From the averments in the bill and from the testimony taken upon the motion to continue the injunction, it appeared that plaintiff's husband was accidentally killed on a public highway as a result of a collision between an automobile driven by him and a public passenger bus. Immediately after the accident, a deputy coroner viewed the body, decided that death was accidental, and gave a certificate to that effect. A request for an inquest was made to the deputy coroner by the attorney for the bus company,

a consultation was had by the deputy coroner and the coroner, it was decided to hold the inquest, and a jury was summoned for that purpose. The bill averred that the coroner had no jurisdiction to hold the inquest, that he acted arbitrarily in summoning the jury, and that the inquest would impose unnecessary costs upon the County of Northampton. Accompanying the bill were the affidavits of two persons who were in the immediate vicinity of the accident and who swore to circumstances showing that it was purely an accidental death. We granted a preliminary injunction. Upon the hearing to continue the injunction, the defendant moved to dissolve the injunction and dismiss the bill because there was no affidavit by the plaintiff that "immediate and irreparable loss or damage will result to the plaintiff before the matter can be heard on notice", as provided by Equity Rule 38. An inspection of the bill shows that there is no such averment. To cure the defect, the plaintiff asked leave to amend it in that respect, and a rule to show cause was granted.

The first question which naturally presents itself is: Would the rule have any application to the case presented by the widow? It is true that the Supreme Court has said that its rules have all the force and effect of statutes. In the leading case of Hinnershitz v. United Traction Co., 206 Pa. 91, the syllabus is: "The equity rules are the rules of all the courts, to be enforced as of course in all . of them, and not relaxed or disregarded as matter of mere indulgence or convenience. But on the other hand they are like all other rules of practice, subject to the judicial discretion of the chancellor as to their strict enforcement under circumstances productive of injustice or exceptional hardship." That was a case where the court allowed exceptions to be filed more than 10 days after the entry of the decree nunc pro tunc. At page 97, Mr. Justice Mitchell reviews the subject matter at length. That case was followed in Borough of Sunbury v. The Sunbury & Susquehanna Ry. Co., 241 Pa. 357, Crennell v. Fulton, 241 Pa. 572, Green v. Prince Metallic Paint Co. (No. 1), 25 Pa. Superior Ct. 415, and Coombe Garment Co. v. Morris, 52 Pa. Superior Ct. 624. In this case it is obvious that, so far as the widow is concerned, there is no question of money loss or damage. The language of Mr. Justice Mercur in County of Lancaster v. Mishler, 100 Pa. 624, applies to her, as follows: "Nay, more, if under the facts offered in evidence a coroner may hold an inquest, he may in his discretion at the expense of the county order a *post mortem* examination, whereby those bound to the deceased by the nearest and most tender ties may have their feeling lacerated, in every case of natural death. The idea is preposterous and abhorrent to all the finer emotions of human nature." Her effort in the present case is to shield her family as far as possible from unnecessary publicity. So far as the other plaintiff is concerned, he appears as a taxpayer, and while under the evidence taken his interest appears to be a very slight one, nevertheless the bill should have contained the averment, called for by the equity rule, but the authorities show that in the discretion of the court it may be amended nunc pro tunc.

Equity Rule 38 was adopted for the protection of the defendant and for the purpose of preventing the granting of preliminary injunctions as a matter of course. The principle involved is precisely the same as is involved in Baur et al. v. Wilkes-Barre Light Co. et al., 259 Pa. 117, cited to us by the learned counsel for the defendant, except that in this latter case the rules referred to were based on acts of assembly requiring the same thing. The same is true of Erie & Northeast R. R. v. Casey, 26 Pa. 287, also cited by the learned counsel for the defendant. However, in Hinnershitz v. United Traction Co., 206 Pa. 91, the rule was relaxed, and also in Coombe Garment Co. v. Morris, 52 Pa. Superior Ct. 624, and in Nesbit et al. v. Riesenman et al., 90 Pa. Superior Ct. 545. It should

also be noted that in Pennsylvania R. R. Co. v. Lilly Borough, 207 Pa. 180, the Supreme Court said: "The objection that no injunction bond was filed by the complainant, made on the argument here, is one that can be obviated by the filing of the bond at any time before the injunction issues." It must be admitted that in Juniata Water & Water Power Co. v. Wilson Electric Co., 226 Pa. 407, a different view was taken from that expressed in the last case. That we have judicial discretion to relieve against strict enforcement of the rules is established by the Hinnershitz case, supra. We will not exercise it against the rules unless the circumstances demand it. The syllabus of Crellin et al. v. Schafer, 4 Luz. L. R. Rep. 211, as follows: "The issuing of a preliminary injunction cannot be justified by the mere fact that it will do the defendant no harm"; is a mere dictum. What the case really decides is that upon a hearing the plaintiff must show a clear right and immediate and urgent danger of irreparable injury. In this case, we think the amendment should be allowed. Having disposed of these matters of practice, we shall proceed to a discussion of the main questions involved.

The learned counsel for the defendant has argued that the matter of holding an inquest is entirely discretionary with the coroner, that this court cannot enjoin an honest exercise of his discretion, and that the court cannot enjoin against something that infringes on anything as intangible as the feelings of the family of the deceased. That a court of equity has jurisdiction to enjoin in cases that have no money involved, or where the money value is very small, and the element of sentiment very prominent, appears in many cases. In McGowin v. Remington, 12 Pa. 56, the syllabus is: "Where the law does not afford adequate redress by compensation in damages for the detention of personal chattels, equity will remedy the injury by decreeing their return specifically.

"Where the chattels, whose specific return is sought, consist in part of a kind whose detention cannot, and in part of a kind whose detention can, be adequately compensated in damages, the detention covering both kinds as one transaction, the jurisdiction and remedies of equity will attach to the whole." At pages 60 and 61, after referring to various subjects, Mr. Justice Bell said: "Such articles as these are commonly esteemed not altogether, or perhaps at all, for their intrinsic value, but as being objects of attachment or curiosity, and, therefore, not to be measured in damages by a jury, who cannot enter into the feelings of the owner; so too the impossibility, or even great difficulty of supplying their loss, may put damages out of the question as a medium of redress." In Beasley et al. v. Allyn et al., 12 W. N. C. 90, the bill was filed to recover possession of a class bowl of a University of Pennsylvania Society. The demurrer which was filed alleged: "(1) Want of equity; (2) Adequate remedy at law; (3) Frivolity." The demurrer was overruled. At page 92 President Judge Allison said: "It cannot, we think, be successfully maintained that it is unreasonable for students or graduates of a college to entertain a special interest or affection for objects connected with collegiate contests, in which they, or those who belong to the same or kindred societies or classes, were active participants, or were interested as spectators or as fellow members.

"The mementos of, not less than the trophies secured by, such contests often become objects around which interest concentrates, which not unfrequently is as enduring as life. This interest may depend not at all on the intrinsic value of the object itself, but, like the mementos and gifts of departed friends, are valued for the memories and events with which they are associated. Shall it be said that considerations of this character, especially when they are connected

with questions of ownership or the right of possession of property, are not such as should be entertained by a court of equity? It has not been so considered by the courts either of England or of this country."

A similar subject is the question of the duty of interment and the right of selecting the place, both of which involve no question of money, but merely a question of sentiment, and which have always been held to be the subject of equitable jurisdiction. In Fox v. Gordon, 16 Phila. 185, the whole subject is learnedly and exhaustively treated by President Judge Thayer; and in Pettigrew v. Pettigrew, 207 Pa. 313, 316, Mr. Chief Justice Mitchell gives a still further reference to the cases. There can be no question but that this widow has a right to protest against the holding of this inquest if it is unnecessary to have one. In the brief of the learned counsel for the defendant he quotes at length from the opinion of Judge Wheaton in Mason v. Hay et al., 12 Dist. R. 17, upon the proposition that this court ought not to attempt to restrain an official from exercising his discretion. Judge Wheaton said: "Courts of equity will restrain a palpable abuse of discretion attempted by a public official, but what amounts to such abuse is susceptible of no set definition and ascertainable by no fixed rule. The difficulties of a case are increased where, as in the case at bar, there is no allegation of fraud or collusion or ulterior motive on the part of the officer exercising the discretionary power, but only a claim of honest mistake. . . .

"The most ordinary regard for the responsibilities which rest upon him ought to lead every public officer, in the expenditure of the public funds, to exercise the same care and judgment, and to give to the matter the same business thought and integrity, which he would exercise and give to his own private affairs. No public official has the right to be wasteful of the money of the taxpayers because it is the custom, or because his predecessors in office have followed such a course." It should be borne in mind that in that case, as well as in all the cases where the question has arisen, the public officer had acted, and the claim was made on the county for the payment of fees. In the present case, both the coroner and the deputy coroner are on salaries, and no action has been taken. The present proceeding is to restrain the coroner from action. The plaintiff alleges that his determination to hold an inquest under the circumstances is a palpable abuse of discretion, and suit is brought for her protection as a member of the decedent's family, against the action of the coroner, for which, if he were seeking to recover fees, he could not recover a cent. In Woodward, Office and Duties of Pennsylvania Coroners, an essay awarded the Peter Stephen Duponceau Prize, by the Law Academy of Philadelphia, it is said (p. 160): "It is reasonably certain that under the Pennsylvania theory of the office, the coroner ought to be 'within his own jurisdiction supreme . . . and . . . the sole judge of his action. . . . He must exercise his discretion wisely. But if he acts unwisely it is neither in the power of the court nor the commission to rectify such acts'." That statement ought not to be accepted as a correct statement of the law. In another section, the author quotes from the opinion of President Judge Church in In re Coroners' Inquests, 1 Pa. C. C. 14, the following extract: "It is true that the presumption is that the coroner acts in good faith and with sufficient cause in holding the inquest, but that presumption may be overthrown by evidence, and when the coroner, holding an inquest, seeks to compel the payment of his fees by the county, the county may always show, if it can, that the coroner acted not in good faith and without sufficient cause or reason.

"It is the coroner himself who is to exercise his discretion, and he is held accountable for the proper exercise of this discretion, as I have before said.

He is the only judge of the necessity of the inquest; he is the one to determine whether any suspicion exists as to the cause of death; and not the neighbors or relatives of deceased. The coroner should not hold an inquest because an individual requests it, but for the primary investigation of the circumstances of the case. So long as there are no suspicious circumstances hanging around the finding of the dead body or the death of the individual, the coroner need not act; neither should he act, nor any one else act for him." There is no allegation in the bill that the coroner or deputy coroner acted in bad faith. We believe that they both thought, after the attorney for the bus company had made the request, that it was proper to hold this inquest, but we think they were honestly mistaken. It would be useless to examine all the cases decided by the judges of the lower courts on the general subject. We have read the opinions and carefully considered them, and quite naturally we are impressed with the opinions of our predecessor, Judge Reeder, in Uhler v. County of Northampton, 1 Leh. Val. 213, and Weaver v. County of Northampton, 2 Leh. Val. 408. Mr. Woodward, in referring to the former of these decisions, at pages 194, 195, said: "The reasoning of this case is so conclusive that it is respectfully submitted that, in spite of the overwhelming weight of authority to the contrary, the case is right and it is confidently asserted that if the case should be brought before the supreme court, that tribunal would follow the doctrine laid down in Commonwealth v. Harman [4 Pa. 269], followed in Lancaster v. Dern [2 Grant 252], and interpreted in Uhler v. Northampton County and not the ill considered decisions which seem to have been dictated by too reverend a care for the county pocket book, even though they have the sanction of a decision of the superior court." The case decided by the Superior Court, which he evidently had in mind, is Miller v. Cambria County, 29 Pa. Superior Ct. 166. The syllabus of that case is as follows: "The authority of a coroner is not to be exercised arbitrarily but with reason and upon sufficient cause. An inquest is held to secure information and develop evidence in case of death resulting from felony or criminal negligence. Where there is reasonable ground to suspect it was so caused, it becomes the duty of the coroner to act. If he has no ground to suspect that the death resulted from criminal misconduct, it is not his duty to act. Where it is apparent that death was caused by disease or by negligence of the deceased or was purely accidental the coroner has no jurisdiction and is not entitled to fees.

"The 'violence and undue means' which gives jurisdiction to a coroner has reference to unlawful conduct by another from which death resulted. Where it is evident that death did not result from such cause, neither inquest nor a view of the body is necessary. If there are no suspicious circumstances attending the death, the coroner has no duty to perform. He is accountable for the proper exercise of his discretion, and if he act without sufficient cause the county is not liable for his fees." A reference to the briefs of counsel will show that most of the cases decided by the lower courts were brought to the attention of the Superior Court, and we feel that that case rules the present case. Those who are interested in the subject matter will find a very illuminating case, Coty et al. v. Baughman et al., 50 S. D. 372, 210 N. W. 348, 48 A. L. R. 1205, and a note at page 1209, which contains very many cases on the subject from various States.

And now, July 10, 1933, motion to dismiss because the affidavit is defective is denied; amendment to bill allowed; and the injunction heretofore issued is continued until final hearing.

From Henry D. Maxwell, Easton, Pa.