## Issuance of Death Certificates

MORGAN, Deputy Attorney General, August 17, 1939.— This department is in receipt of your letter of recent date advising that numerous coroners throughout the

Commonwealth are issuing and requiring a fee for death certificates to be used for insurance purposes; and that this practice deprives the Commonwealth of a considerable sum of money each year which it would otherwise collect for the issuance of such certificates through the Bureau of Vital Statistics. You request an opinion regarding the legality of such action on the part of the several coroners issuing these certificates.

Coroners are specifically designated as county officers in the Constitution of this Commonwealth (article XIV, sec. 1), and the office has been the subject of considerable legislation, both prior and subsequent to the adoption thereof. Their powers, duties, and jurisdiction, however, are of very ancient origin and today remain the same as they were at common law except insofar as they may have been modified by constitutional or statutory provision. In order to answer your inquiry, therefore, it becomes necessary to examine the common law of England and the pertinent acts of Parliament of that country (which have become a part of the common law of this Commonwealth) as well as the statutes enacted by the General Assembly in modification thereof.

From a careful examination of the statutes of this Commonwealth it becomes apparent that from the earliest days there has been considerable legislation enacted concerning or affecting the office of coroner and its administration. In none of these statutes, however, are the powers and duties of coroners specifically set forth. The various acts authorizing coroners to appoint deputies generally furnish little assistance since they merely confer upon those persons appointed "the same powers as the coroner". The Act of June 6, 1893, P. L. 330 (authorizing the appointment of deputies in counties of the first class), constitutes an exception in that it provides that "Such deputy or deputies so appointed shall have *like* power [i. e., the same as the coroner] to hold inquests, to select, summon and compel the attendance of jurors and witnesses and to administer oaths." So far as we

have been able to ascertain, the provisions above quoted constitute the only statutory reference to the powers of coroners in this Commonwealth.

It is surprising too that there is little judicial opinion concerning the powers and duties of this officer. In In re Coroners' Inquests, 1 Pa. C. C. 14, 15 (1885), the court says:

"The coroner is a very ancient officer, and originally acted only in the nature of a committing magistrate. Much of his authority in England he derived from the common law; and the acts of parliament, which afterwards defined more particularly his authority, became a part of the law of this commonwealth. It is the duty of the coroner to hold inquests, *super visum corporis*, where he has cause to suspect that the deceased was feloniously destroyed, or where his death was caused by violence, or where he has any ground to suspect that the death of any person was an unnatural one, or an unaccountable one, or a suspicious one. When the cause of death is not doubtful, the coroner ought not to put the county to the expense of holding an inquest."

Perhaps the most comprehensive definition of the powers and duties of coroners is found in 13 C. J. 1244, §12:

"The powers, duties, and jurisdiction of coroners are of very ancient origin, and remain what they were at common law, except in so far as they have been modified by our statutes or institutions. By an ancient statute which is said to be wholly directory and declaratory of the common law, the duties of the coroner are either judicial or ministerial, but principally judicial. His ministerial duties consisted only in acting as the sheriff's substitute when for any reason the sheriff was incapacitated to act. The principal judicial function of the coroner, and the one which virtually characterizes his office in modern times, in both England and America, is that of investigating the causes of sudden, violent, and unnatural deaths. The powers and duties of a coroner with re-

spect to the holding of an inquest include the determination of the question as to whether an inquest is necessary, and, if deemed necessary or proper, then to appoint the time and place for holding the same; and also the summoning and qualifying of the jury; viewing the body, determining the question as to the necessity of a post mortem examination and, if deemed necessary, ordering the same; summoning, qualifying, and examining the witnesses; and the preparation and filing of the return of the inquest."

It, therefore, seems obvious that, although the Constitution recognizes these officers and they have been frequently the subject of legislative enactment and judicial discussion, the framers of the Constitution, as well as the legislature and the courts, intended to preserve, essentially, the nature and functions of the office as the same existed at common law.

1 Sharswood's Blackstone's Commentaries, p. 346, contains a discussion of the office which, although very interesting historically, we do not here set forth in full. It appears therefrom, however, that the earliest statutory definition of the powers and duties of coroners is found in the statute 4 Edward I, 1 Eng. Stat. at L. 60, "de officio coronatoris" and, since this act of Parliament has become a part of the common law of this Commonwealth, it is to this day controlling unless modified by legislative or judicial action. At page 347 it is said:

"The office and power of a coroner are also, like those of the sheriff, either judicial or ministerial; but principally judicial. This is in great measure ascertained by statute 4 Edw. I *de officio coronatoris;* and consists, first, in inquiring when any person is slain, or dies suddenly, or in prison, concerning the manner of his death. And this must be '*super visum corporis;*' for, if the body be not found, the coroner cannot sit. He must also sit at the very place where the death happened; and his inquiry is made by a jury from four, five, or six of the neighbouring towns, over whom he is to preside. If any be found guilty,

by this inquest, of murder or other homicide, he is to commit them to prison for further trial, and is also to inquire concerning their lands, goods, and chattels, which are forfeited thereby: but, whether it be homicide or not, he must inquire whether any deodand has accrued to the king, or the lord of the franchise, by this death; and must certify the whole of this inquisition, (under his own seal and the seals of his jurors,) together with the evidence thereon, to the court of King's Bench, or the next assizes. Another branch of his office is to inquire concerning shipwrecks, and certify whether wreck or not, and who is in possession of the goods. Concerning treasure-trove, he is also to inquire who were the finders, and where it is, and whether any one be suspected of having found or concealed a treasure; 'and that may be well perceived (saith the old statute of Edw. I.) where one liveth riotously, haunting taverns, and hath done so of long time:' whereupon he might be attached, and held to bail upon this suspicion only.

"The ministerial office of the coroner is only as the sheriff's substitute. For when just exception can be taken to the sheriff, for suspicion of partiality, (as that he is interested in the suit, or of kindred to either plaintiff or defendant,) the process must then be awarded to the coroner instead of the sheriff, for execution of the king's writs."

As hereinbefore indicated, there has been no legislative nor judicial abrogation in this Commonwealth of the powers of coroners as above set forth. On the contrary, the same have to some extent been recognized by the judiciary in at least two instances. In Fayette County Deputy Coroner's Case, 20 Pa. C. C. 641, 642 (1898), Judge Mestrezat (later justice of the Supreme Court) said:

"The powers and duty of the coroner are both judicial and ministerial; what may be called his original jurisdiction is judicial; his ministerial functions being exercised mainly when acting in the place of the sheriff: 7 A. & E. Enc. of L. (2d ed.) 602."

And the Supreme Court of Pennsylvania in County of Lancaster v. Mishler, 100 Pa. 624 (1882), at page 626 said:

"In holding an inquest, the coroner acts in a judicial capacity. If he has jurisdiction in the particular case, and makes a sufficient record of the inquest, the regularity of the finding cannot be impeached in a collateral proceeding. We see no such defect in this record, nor in the manner in which it was kept as to prevent its being admitted in evidence.

"It is the duty of a coroner to hold an inquest *super visum corporis*, where he has cause to suspect the deceased was feloniously destroyed: County of Northampton v. Innes, 2 Casey 156; or when his death was caused by violence: Commonwealth v. Harman, 4 Barr 269."

In view of the above authorities and discussion, does a coroner, then, have the authority to issue and collect a fee for a certificate of death to be used for insurance purposes? Unless authority for such action is to be found in the common law of England or this Commonwealth or has been conferred by an act of the General Assembly, it would appear plainly that he does not. At no place in the above-quoted authorities does it appear that a coroner has the authority, conferred either directly or by implication, to perform a ministerial act of this nature. And certainly this authority has never been conferred by the legislature. On the contrary an examination of the Act of June 7, 1915, P. L. 900, is directly in derogation of such authority. This act established a uniform and centralized system for the registration of births and deaths occurring throughout the Commonwealth and charged the administration of its provisions to the Bureau of Vital Statistics of the Department of Health.

Section 21 contains the following pertinent provisions:

"*The Department of Health* shall, upon request and the payment of the fee as hereinafter provided, furnish any applicant a certified copy of the record of any birth, death, or marriage registered under provisions of this act . . ."

(as amended by section 7 of the Act of April 22, 1937, P. L. 399). (Italics supplied.)

Section 8 of the Act of 1915, supra, provides: "Provided further, That if the circumstances of the case render it probable that the death was caused by unlawful or suspicious means, the registrar shall then refer the case to the coroner for his investigation and certification. . . . And any coroner whose duty it is to hold an inquest on the body of any deceased person, and to make the certificate of death required for a burial permit, shall state in his certificate the nature of the disease or the manner of death; and if from external causes or violence, whether (probably) accidental, suicidal, or homicidal, as determined by the inquest, and shall, in either case, furnish such information *as may be required by the State Registrar to properly classify the death.*" (Italics supplied.)

And in section 24:

"That all laws and parts of laws inconsistent with the provisions of this act are hereby repealed, and no system for the registration of births and deaths shall be continued or maintained in any of the several municipalities of this Commonwealth other than the one provided for and established by this act."

It is obvious that the legislature, in enacting the said statute, intended to devise a uniform system for the registration and certification of births and deaths in this Commonwealth and to give the Department of Health, through the Bureau of Vital Statistics, the exclusive right to issue the certificates provided for therein. It will be noted that the only power conferred upon any coroner is that of issuing a certificate to the registrar in cases of death by violence, etc., as set forth in section 8. Had the legislature intended that the power to issue such certificates was to be vested in any other person or agency, it would have so provided.

We are of the opinion, therefore, and you are advised, that no coroner holding office within this Commonwealth

has the authority to issue a death certificate other than to the Department of Health as provided for in section 8 of the Act of June 7, 1915, P. L. 900.