# County of Fayette *versus* Batton.

1. Where several persons have been suddenly killed by the same violent cause, under circumstances proper to be inquired of by a coroner's inquest, it is proper and necessary for the coroner, acting in good faith, to hold a separate inquest over each body.   And in such case where the coroner proceeds separately, and qualifies the jury separately in each case, he is entitled in each case to the regular fees allowed by law.

2. Nineteen persons came to their death suddenly and almost simultaneously by an explosion of fire-damp in a coal mine.   The coroner held a separate inquest over each body at the respective homes of the deceased, qualifying the same jury separately over each body, and the inquest returned a separate finding in each case :
   *Held*, that this was the necessary and proper course to pursue under the circumstances, and that the coroner was entitled to the legal fees in each case.

February 4th, 1885.   Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ.   GREEN, J., absent.

ERROR to the Court of Common Pleas of *Fayette county :* Of January Term, 1885, No. 28.

Case stated, wherein John A. Batton was plaintiff, and the County of Fayette was defendant, as follows :

John A. Batton, the plaintiff, is and was on the 20th day of

February, 1884, coroner in and for the county of Fayette.   On that day an explosion from fire-damp occurred in a coal mine at West Leisenring in said county, which resulted in the death of nineteen men.   As soon after the explosion as the circumstances would permit, the bodies of the deceased were removed from said mine to their respective homes or late boarding places in the adjoining village of West Leisenring.   In two of the houses two bodies were left in the same room ; in two other houses, two bodies were placed in each house, but each body in a separate room.   The eleven remaining bodies were each taken to different houses.   The plaintiff was then notified, and going upon the ground where the accident occurred he summoned a jury of six men, and proceeded from house to house, qualified the jury over each body, called a witness to identify the respective bodies, and after in this manner viewing each separate body he adjourned the hearing to the Market House in Uniontown, where they again met and examined a number of witnesses as to the cause of the explosion, &c., making in all thirty-nine witnesses qualified and examined by the plaintiff.    After the examination of witnesses the inquest then returned a separate finding in each case.   The plaintiff alleges that it was necessary to swear the jury in each case and hold a view upon each separate body, and that for these services he is entitled to the following fees, to wit:—

Summoning and qualifying jury in 19 views,
    at $1.37   .    .    .      .      .      .    $26.03
Viewing 19 bodies at $2.75 .    .    .    .    52.25
Traveling 5 miles direct at 12 cents    .    .60
Qualifying 39 witnesses at 25 cents    .    .  9.75

· Total     .    .    .    .    .    .    .    $88.63

It was generally known and undisputed at the time the coroner began to hold said inquisition that all of the deaths had resulted from the same explosion, and the coroner knew that all of the deaths resulted from the same explosion upon holding the first inquisition.   It is claimed on the part of the defendant county, that the plaintiff is entitled to fee for summoning and qualifying jury only in one case, and in like manner for the same fee for viewing body as if but a single view had been made, and hence claim that plaintiff is entitled only to the following fees in all, to wit:—

Summoning and qualifying jury   .    .    .    $1.37
Viewing bodies     .    .    .    .    .    2.75
Mileage 5 miles direct at 12 cents.    .    .    .60
Qualifying 39 witnesses at 25 cents   .    .  9.75

Total     .    .    .    .    .    .    .    $14.47

[County of Fayette *v.* Batton.]

If the court be of opinion that the plaintiff is entitled to fees in each view, in manner as above claimed by him, then judgment to be entered for the plaintiff, for the sum of $88.63, but if he is entitled to fees only in manner claimed by the defendant, then judgment to be entered for plaintiff for the sum of $14.47. Either party reserving the right to sue out a writ of error thereon. The court to dispose of the costs.

The court (INGHRAM P. J.) entered judgment on the case stated for the plaintiff for $88.63. The defendant took this writ of error, assigning for error the said judgment.

*A. D. Boyd*, for the plaintiff in error.—All the nineteen deaths having occurred at the same time and from the same cause, the summoning and qualifying of the same jury separately for an inquest on each body, was unnecessary. One inquest for all was sufficient. . The court has power to judge of the necessity of an inquisition by the coroner, and if found to be unnecessary no costs will be allowed : The King *v.* The Justices of Kent, 11 East, 229. The judge in this case might well have followed the ruling of his predecessor, the late Judge WILLSON, in the Quarter Sessions of Fayette Co. at No. 117, December Sessions, 1883, who made an order approving the holding of inquisitions by a justice of the peace and jury, on the dead bodies of four persons who were run over and killed by a railroad locomotive while they were standing on a railroad track in the borough of Connellsville, but directed costs to be paid as if inquisition had been held on but one body ; his Honor observing that if the newspaper account of the accident which represented it as occurring in the presence of a number of witnesses was correct, and there being no mystery about the manner or cause of the deaths, that no inquisition should have been held.

*S. L. Mestrezat* (with him *Morrow and Hertzog*), for the defendant in error.—The deaths of these persons were all sudden and, in a certain sense, violent. The coroner could not by having his jury view one body, report upon the deaths of nineteen, for this only could be done *super visum corporum*. Since the bodies had been removed to different houses throughout the village, he was obliged to take the jury from place to place and have them sworn in the presence of each body, and in this manner performed precisely the same services in each case as though a single body had been found. It is argued by counsel for plaintiff in error, that because the coroner knew upon holding the first inquest that all had come to their death by the same explosion, it was unnecessary to hold but the one inquisition. If the purpose of the inquisition was simply

10 OUTERBRIDGE—38

to ascertain if there had been an explosion, there might be some force in this argument, but if his knowing from general rumor before an inquest had been held at all that an explosion had occurred and that it was the cause of the deaths of these men, proves that it was necessary to hold but one inquest, the same reasoning must go farther and prove that it was unnecessary to hold an inquest at all. But since the object of the coroner's inquiry was not simply to ascertain if there had been an explosion and men had lost their lives in consequence, but also to ascertain what had been the cause of the explosion, since it might have been caused by negligence on the part of the owners, or gross negligence or even criminality on the part of the operators, or laborers, or both; and all may have been to blame, or the cause may have been beyond the control of any, and consequently a calamity for which none should be censured; the findings of the coroner's jury could therefore scarcely fail of being followed by suits for heavy damages, or criminal prosecutions as they should show the facts in the case. It was, therefore, highly important that the fullest investigation of the whole matter should have been made by the coroner, and from the number of witnesses examined, and the propriety of which is not disputed, he is shown to have made such an investigation.

Could he have discharged his duty in so important a matter by simply going upon the ground and selecting one body from the number and make it the subject of his investigation? If so, how should he make the selection? And what kind of precedent would such a decision establish?

The question here in dispute has been settled in County of Allegheny *v.* McClung, 53 Pa. St., 482. The fees were properly charged: Rambo *v.* Commissioners, 1 Chester Co. Rep., 416. Judge WILLSON's ruling, cited by the other side, was not in the case of the coroner, and was chiefly to the effect that the jury summoned by the justices of the peace were entitled only to *per diem* pay, and not to fees in each inquest.

The opinion of the court was filed February 16th, 1885.

PER CURIAM. It is the duty of a coroner to hold an inquest *super visum corporum*, where he has cause to suspect the deceased was feloniously destroyed or where his death was caused by violence: County of Lancaster *v.* Mishler, 4 Out., 624.

In the present case the good faith of the coroner, and the necessity for the inquests, are unquestioned. The death of the nineteen persons was caused by violence. Their bodies were not to be treated as if they had been cattle. The body of each required a separate examination. The jury was prop-

erly sworn in each case separately. An inquest was justly held on each body, and a separate return made thereof. It follows the coroner was entitled to fees in each case.

Judgment affirmed.