## Andrews Petition

*Kenneth J. Yablonski*, *Richard D. Salle* and *Ewing B. Pollock*, for petitioners.

*Glenn R. Toothman*, District Attorney, for respondent.

*W. Rubert Thompson* and *John E. Baily*, amici curiae.

SHUGHART, P. J., Ninth Judicial District, Specially Presiding, April 15, 1964.—A disastrous mine explosion occurred in Robena No. 3 Mine in Greene County on December 8, 1962, which took the lives of 37 miners. Subsequently, on March 4, 1963, Frank Behm, Coroner of Greene County, filed reports in the Quarter Sessions Court of Greene County respecting the death of each of the miners killed. The reports stated that death in each case was a "sudden death not of suspicious nature". The reports were presented in open court and were approved and marked to be filed.

On June 3, 1963, petitions were filed on behalf of the widows of 30 of the deceased miners praying, inter alia, that a rule be issued on the coroner to show cause why an inquest should not be conducted. Answers were filed by the coroner on June 28, 1963. After disposition of a petition presented by certain parties to intervene in the proceedings (see opinion and order filed November 22, 1963), an agreed statement of facts was filed by counsel for all parties and a hearing was held on March 12, 1964, at which testimony was taken in support of the petition. Oral argument was heard on

March 13, 1964, and written briefs have been presented by petitioners, in behalf of the coroner, and by W. Robert Thompson and John E. Baily, members of the Greene County bar, as amici curiae; and the matter is now before us for decision.

By stipulation filed, it has been agreed that since the issues are the same in all of the 30 cases, a complete record be maintained in the dockets in the case involving the death of Adam Andrews, Jr., only, and that that file thereafter should suffice for all similar proceedings. It is further understood that the disposition of this petition be deemed to be the disposition of all of the other petitions.

From the agreed statement of facts and the testimony presented, it appears that following the explosions at the mine, rescue operations were conducted, and the bodies of all the miners were recovered between December 8 and December 11, 1962.

Frank J. Behm, the Coroner of Greene County, was present at the mine and viewed the body of each of the miners upon recovery with the assistance of Dr. Robert Gray, deputy coroner, and Drs. Roy C. Jack and David Tingle. Following the disaster, then Secretary of Mines, the Hon. Lewis E. Evans, under authority conferred by section 124 of the Bituminous Coal Mine Act,[1] appointed a five-member commission of inspectors to make an investigation of the explosions. The report of this commission, together with all the testimony, was incorporated into the record of this case by reference and copies were furnished to the hearing judge. Page 1 of that report states the purposes of the commission as follows:

"(1) thoroughly investigate the causes of the explosion,

---

[1] Act of July 17, 1961, P. L. 659, article I, sec. 124, 52 PS §701-124.

"(2) fix responsibility and

"(3) submit recommendations and requirements".

The commission held hearings at the Garards Fort Shaft of the mine on January 3rd to 9th, inclusive, and on January 11, 12, 14 and 15, 1963, during which 38 witnesses were heard and 1,185 pages of testimony taken. This commission filed a report bearing date of February 25, 1963, on February 28, 1963. Representatives of the United States Bureau of Mines of the Department of the Interior participated in the hearings, and a report by this bureau was filed February 25, 1963, and made available to the coroner.

The report of the commission recommended that certain individuals in a supervisory capacity at the mine be charged with specified violations of the Pennsylvania Bituminous Coal Mine Act, but neither this report nor that of the United States Bureau of Mines "fixed responsibility" for the disaster on any person or persons.

The coroner was not invited to attend the hearings and did not attend, although he stated that he was informed of the activities of the commission by Lester D. Kimmel, a member of the commission who died prior to the filing of the report. Both reports of the investigation had been filed prior to the time the coroner filed his certificates of death with the court on March 4, 1963.

No request was made of the coroner to conduct an inquest by any of the officials conducting the investigation or by any other party prior to the filing of this petition.

The coroner resists the petition for an inquest on two grounds. First, it is his position that this court has no authority to order an inquest 90 days after the filing of his certificate and return and its approval by the court. Secondly, he contends that a full and complete investigation has already been made by depart-

ments of both the State and Federal governments, and that an inquest would be a mere duplication of effort, the costs of which should not be imposed upon the county.

Section 1237 of the Act of August 9, 1955, P. L. 323, 16 PS §1237, provides:

"The coroner having a view of the body shall investigate the facts and circumstances concerning deaths which appear to have happened within the county . . . for the purpose of determining *whether or not an inquest* thereof *should be had,* in the following cases: (1) Any sudden, as hereafter defined, violent or suspicious death, (2) any death wherein no cause of death is properly certified by a person duly authorized therefor, (3) *any death resulting from a mine accident, as directed by law.* . . .

"The purpose of the investigation shall be to determine whether or not there is any reason sufficient to the coroner to believe that any such death may have resulted from the criminal acts or criminal neglect of persons other than the deceased, rather than from natural causes or by suicide". (Italics supplied.)

The Bituminous Coal Mine Act provides detailed procedure to be employed whenever a fatal accident occurs in or about any bituminous coal mine. Section 401(a) of that act, supra, provides that upon such happening, the State mine inspector of the district and the mine safety committee of the employes shall be notified "forthwith" by telephone or telegraph. Section 401(b) provides, inter alia:

"(b) *If the coroner shall determine* to hold an inquest, he shall notify the mine inspector of the time and place of holding the same, and *the mine inspector* in the district *shall offer such testimony* as he may deem necessary to thoroughly inform the said inquest of the cause of the death. *He shall also have authority at any time to appear before such coroner or jury and examine*

*or cross-examine any witness. . . ."* (Italics supplied.)

The legislature has thus specifically delineated the procedure for inquests in cases involving fatalities arising from mining. In addition, it has *imposed a duty* upon the Department of Mines and Mineral Industry to conduct investigations whenever a fatal accident occurs in or about any bituminous mine. Section 401 (c) of the act, supra, provides as follows:

401 (c) ". . . The said mine inspector *shall proceed* to investigate and *ascertain the cause of the accident,* and make a record thereof, which he shall file as provided for; and to enable him to make the investigation *he shall have power to compel the attendance of persons to testify, and also to administer oaths or affirmations.* If it is found, upon investigation, that the accident is due to the violation of any of the provisions of this act by any person other than those who may be deceased, the mine inspector in the district *shall institute appropriate proceedings against such person or persons".* (Italics supplied.)

In addition to these provisions, section 124 of the act, supra, authorizes the appointment of an investigation commission, as was done in the case of this disaster.

It is significant that the provisions of the Act of June 9, 1911, P. L. 756, which governed bituminous mining operations prior to the enactment of the present law, article XXVII, secs. 2 and 3, contained provisions similar to those of the Act of 1961, with reference to the duties and responsibilities of mine inspectors and coroners in the event of mine fatalities. Coal mining is an industry that involves highly specialized and technical knowledge and skills, which persons unfamiliar with mining operations cannot readily comprehend. Unfortunately, it is also an industry involving considerable danger to those engaged in it. In obvious recognition of this, the legislature has provided for the

investigation of accidents by mine inspectors who possess the experience and technical knowledge to properly conduct them.

The wisdom of this legislative action is amply demonstrated by the instant situation. A reading of the reports of the two investigative agencies reveals the extreme difficulty that one without technical knowledge of the industry encounters in an effort to comprehend their contents.

Section 1238 of the Act of 1955, supra, which defines the duties of the coroner, provides, inter alia:

"If, upon the investigation by the coroner, he shall not be satisfied thereby that the death resulted from natural causes, or by suicide *he shall proceed to conduct an inquest* upon a view of the body as provided by law. . . . At the inquest the coroner's duty shall be to ascertain the cause of death and whether any person other than the deceased was criminally responsible therefor by act of neglect, and, if so, the identity of the person and any further evidence and witnesses regarding the crime. . . ." (Italics supplied.)

Counsel for petitioners contend that this section of the act imposes a duty upon the coroner to conduct an inquest in this case. Section 1237 of the Act of 1955, supra, provides that: "The coroner having a view of the body shall investigate the facts and circumstances . . . for the purpose of determining *whether or not an inquest* thereof should be had, in the following cases: . . . (3) any death resulting from a mine accident, *as directed by law,* . . ." (Italics supplied.)

If the legislature had intended inquests in mine fatalities to be governed by the provisions of section 1238 of the act, the specific reference thereto in section 1237, which permits the coroner to determine in his discretion whether an inquest should be held in such cases, would have been unnecessary. The Statutory Construction Act requires us to construe a statute so

as to give effect to all of the provisions of the law: Act of May 28, 1937, P. L. 1019, article IV, sec. 51, 46 PS §551. The construction urged by petitioners would be offensive to this principle. We conclude, therefore, that whether or not an inquest is held in regard to fatalities resulting from mining is governed by section 401(b) of the Bituminous Coal Mine Act, supra, which leaves such a determination to the discretion of the coroner.

As a practical matter, it is difficult to see what value could be derived from a coroner's inquest in this case. The petition for the rule upon the coroner fails to specify what, if any, witnesses could be called who did not testify before the commission; nor what, if any, additional testimony might be elicited from any witnesses appearing before the commission. Secretary Evans, who personally conducted the hearings before the commission, indicated at the close of the hearings that the commissioners had heard the testimony of the persons in official capacity at the mines and contract miners as well and ". . . We have interrogated very thoroughly, in my opinion, all the people who have appeared here and especially those who worked in 8 Left section of Robena #3 Mine (the section in which the explosion occurred). . . . I believe that the Commission *has heard from everyone who we determined could be vital to this hearing and to call other people, in our opinion, would be merely repetitious*". (Italics supplied.)

In Commonwealth ex rel. Czako v. Maroney, 412 Pa. 448, Mr. Justice Eagen, after quoting the provisions of section 1237 of the Act of 1955, supra, said, at page 449:

"Generally speaking, whether or not an inquest should be held is within the exercise of a reasonable discretion by the coroner. See Marvin v. Monroe County, 154 Pa. Superior Ct. 75, 35 A. 2d 781 (1944).

"At common law, the verdict of a coroner's jury

could be used for prosecuting the offenders without and instead of an indictment by a grand jury. However, in modern times in the United States, the finding of a coroner's jury is *merely advisory to the public authorities charged with the administration of the criminal law. It is only a preliminary investigation and not a trial on the merits. Its finding is binding on no one as a judgment. Its main purpose is to ascertain, if possible, if the death were due to other than natural causes.* See, 13 Am. Jur., Coroners §§6, 11 (1938) ; 18 C.J.S. Coroners §15, (1939) ; 8 P.L.E. Coroners §2 (1958)''. (Italics supplied.)

A thorough and complete investigation having already been made by two governmental agencies, further inquiry by the coroner would be superfluous. It is evident, therefore, that ·Coroner Behm did not abuse his discretion in refusing to conduct an inquest in this case.

Paragraph 14 of the statement of agreed facts sets forth that counsel for petitioners contend that the reports of the investigation contain testimony that the death of the miners was the result of conditions existing in the mine on December 6, 1962, which, but for the existence thereof, there would have been no explosion and no loss of life. Counsel for the coroner agrees that the reports made findings of certain violations of the mining laws, but does not agree that the reports made any findings that these violations are connected with the explosions.

Counsel for petitioners urge that this disagreement of counsel as to the conclusions to be drawn points out the need for an inquest. In substance, counsel argue that since legal minds cannot agree upon the proper conclusions to be drawn from the testimony, the corner should submit all of it to a jury of laymen for a decision. The question thus stated leads to an obvious answer. Even if a coroner's jury drew the conclusion contended

for it by petitioners, it would be advisory only. On the other hand, if counsel conclude that some criminal prosecutions are warranted, the absence of an inquest constitutes no bar to the filing of criminal informations: Commonwealth ex rel. Czako v. Maroney, supra.

Counsel have cited several cases in support of their contention that an inquest should be held in the instant case.[2] The Lancaster County, the Lee's and Uhler cases involve other than mining fatalities and are, therefore, distinguishable on the basis of what has already been said. The Jones and Fayette County cases were decided when the procedure in the case of deaths from explosions in bituminous mines was set forth in section 14 of the Act of April 18, 1877, P. L. 56, which provided for an investigation by the mine inspector to ascertain the cause of the explosion only ". . . if the results of the explosion do not require an investigation by the coroner. . . ."[3] Under the Acts of 1877 and 1885, the primary investigative duty in the case of deaths from mine explosions fell upon the coroner, whereas the more recent acts have placed an original responsibility upon the mine inspectors. Therefore, cases decided under the prior statutes are not controlling here.

---

[2] (1) County of Lancaster v. Mishler, 100 Pa. 624 (October 4, 1882).

(2) Lee's Case, 9 Pa. C. C. 474 (February 2, 1891).

(3) County of Fayette v. Batton, 108 Pa. 591 (February 16, 1885).

(4) Inquest on Body of William Jones, 1 Pa. C. C. 19 (July 23, 1885).

(5) Uhler v. County of Northampton, 1 Lehigh 213 (March 22, 1885).

All of these cases involve actions by coroners to collect fees for inquests held by them. None involves efforts to force a coroner to conduct an inquest.

[3] The Act of June 30, 1885, P. L. 205, did not become effective until after the decision in the Fayette County case in which the opinion was filed February 16, 1885. However, the provisions of section 12 of the Act of 1885 were substantially the same as section 14 of the Act of 1877.

As indicated earlier, counsel for the coroner and the amici curiae earnestly contend that this court has no jurisdiction to entertain the petition. Because we feel that the coroner cannot be compelled to conduct an inquest in this situation, irrespective of the procedure employed to bring about this result, we have chosen to rest our decision on this substantive law basis. In view of this fact, it is unnecessary to pass upon the procedural question.

### ORDER OF COURT

And now, April 15, 1964, for the reasons set forth in the foregoing opinion, it is ordered that the rule upon Frank J. Behm, Coronor of Greene County, to show cause why he should not conduct an inquest inquiring into the death of Adam Andrews, Jr., be and is hereby discharged. An exception is noted for petitioners.