## Rubeck v. McLucas

*James Jubelirer*, for plaintiff.

*Merrill W. Kerlin*, for defendant.

MacPHAIL, P. J., February 16, 1967.—On May 18, 1966, one of the most intensive manhunts ever conducted in the Commonwealth of Pennsylvania concluded with the slaying of William Hollenbaugh, the kidnapper of Peggy Ann Bradnick. Hollenbaugh died as a result of a gunshot wound or wounds as he attempted to escape through a cordon of police at or near Ft. Littleton in Fulton County, Pa. Exactly who was

responsible for slaying Hollenbaugh has never been judicially determined.

Larry Rubeck, a young lad 15 years of age, was at his home in Ft. Littleton at the time Hollenbough was trapped by the police and is alleged to have fired a 12-gauge shotgun loaded with a pumpkin ball at Hollenbaugh. Some publicity has been given to young Rubeck as the one who actually killed Hollenbaugh. Hollenbaugh was also shot at by police officers as he attempted to break through.

No coroner's inquest was conducted relative to the cause of death of Hollenbaugh.

About a month after Hollenbaugh's death, young Rubeck, by his father as parent and natural guardian, filed a complaint in mandamus against Dr. Russell McLucas, Fulton County Coroner, requesting a judgment from this court against defendant commanding him to hold a coroner's inquest as soon as feasible.

Defendant filed preliminary objections to the complaint consisting of a motion for a more specific complaint and a motion to strike the complaint. We feel, in view of our conclusion with respect to the motion to strike, that it will be unnecessary to discuss the motion for a more specific complaint.

The motion to strike is based upon three grounds, the first of which is that "the complaint is insufficient in that it does not state a cause of action".

"Mandamus may be defined as a command issuing from a court of law of competent jurisdiction, in the name of the state or sovereign, directed to some inferior court, officer, corporation, or person, requiring the performance of a particular duty therein specified, which duty results from the official station of the party to whom it is directed or from operation of law. It is an extraordinary remedy of great antiquity, and is one of the most extraordinary writs known to law, since it takes an official up by the coat lapel and orders

him to do what, up to that moment, he has felt he had no right to do and was under no compulsion to do. Obviously, so drastic a remedy may be permitted only when the right to it is clear": 11 Standard Pa. Prac., Mandamus 26. Therefore, in order for plaintiff in the present case to state a cause of action, he must either spell out a duty which defendant was required by law to perform, or he must show that if defendant's duty was discretionary, there was an arbitrary abuse of that discretion.

The office of coroner is one which comes to us from the common law of England and is one of the oldest offices known to the law. At one time, in the early history of England, it was also one of the most powerful offices. Changing ideas as to the efficient administration of criminal justice have resulted in the common law powers of the coroner being drastically curtailed: 18 Am. Jur. 2d, Coroners or Medical Examiners §1. In Pennsylvania, the coroner derives his authority from the Act of August 9, 1955, P. L. 323, as amended, 16 PS §1231 et seq. Section 1237 of the Act of 1955, 16 PS §1237, provides for coroner investigations in certain enumerated situations. Significantly, this section contains a paragraph which reads as follows: "The purpose of the investigation shall be to determine whether or not there is any reason *sufficient to the coroner* to believe that any such death may have resulted from the *criminal acts* or *criminal neglect* of persons other than the deceased, rather than from natural causes or by suicide". (Italics supplied). The next section (section 1238) of the same act, 16 PS §1238, provides in pertinent part as follows: "If, upon the investigation by the coroner, he shall not be satisfied thereby that the death resulted from natural causes, or by suicide, he shall proceed to conduct an inquest upon a view of the body as provided by law. . . . At the inquest the coroner's duty shall be to ascertain

the cause of death and whether any person other than the deceased was *criminally responsible* therefor by act or neglect, and, if so, the identity of the person and any further evidence and witnesses regarding the crime". (Italics supplied).

As we view this case, it is plaintiff's burden to plead facts which would bring this situation within the purview of the coroner's duties as defined by the statute. Pennsylvania Rule of Civil Procedure 1095 states that in mandamus, plaintiff shall set forth in his complaint: "(2) the facts upon which plaintiff relies for the relief sought; (3) the act or duty the defendant is required to perform and his refusal to perform it".

Obviously, if defendant's duty in this case is a mandatory duty, all that plaintiff need do is plead facts showing that this is true. However, if defendant's duty is discretionary, then plaintiff must allege sufficient facts which would show: (a) that the coroner would have been justified in exercising his discretion, and (b) his refusal to exercise that discretion was capricious or arbitrary. A court will not review discretionary acts of a public official in the absence of bad faith, fraud, capricious conduct or abuse of power: Eways v. Board of Road Supervisors, 422 Pa. 169 (1966).

Directing our attention now to the coroner's duties, as outlined in the act of 1955, supra, with respect to the specific circumstances with which we are now concerned, we observe first that the coroner must determine if the death falls within any one of the situations enumerated in section 1237. If he determines that the death does fall within one of those categories, he next determines if there is any reason *sufficient to him* to believe that the death resulted from criminal acts or criminal neglect. Finally, if he decides that there may be a reason sufficient to him to believe that death may have resulted from criminal acts or criminal neglect,

he then conducts an inquest to determine that ultimate fact and the identity of the person responsible therefor. Further, the coroner is authorized to consult and advise with the District Attorney in the exercise of his duties (section 1242). It is interesting to note that section 1239, relating to "sudden death", says that the provisions of that section should not be construed to affect the "coroner's discretion" as to whether or not any death was suspicious, etc.

Counsel for plaintiff have urged upon us that the first sentence of section 1238, which we have quoted above, imposes a mandatory duty upon the coroner. That is to say, if the coroner finds from his investigation that the death was not from natural causes or suicide, the coroner must proceed to conduct an inquest. Considered apart and out of context, the language of that sentence says exactly that. However, we are required to construe a statute so as to give effect to all of its provisions: Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 51, 46 PS §551. Thus, here when the first sentence of section 1238 is read with the rest of that section and with sections 1237, 1239 and 1242, it is apparent that it is only where criminal acts or criminal neglect are a possible cause of death, in the opinion of the coroner, that the expense of an inquest should be undertaken. If plaintiff's view of the excerpt from section 1238 were accepted, it would mean that every death which did not result from natural causes or suicide would require a coroner's inquest. We think such a construction of the statute was never intended by the legislature. Accordingly, we conclude that the coroner's duty is a discretionary one.

Fortunately, we need not rely upon reason alone to reach this conclusion. The Supreme Court of Pennsylvania, in Commonwealth ex rel. Czako v. Maroney, 412 Pa. 448 (1963), held that "Generally speaking, whether or not an inquest should be held is within the

exercise of a reasonable discretion by the coroner". The Superior Court of Pennsylvania said, in Marvin v. Monroe County, 154 Pa. Superior Ct. 75, 78 (1943) : "The principal judicial function of the coroner in these modern times, as in the early days, is to investigate the causes of sudden, violent and unnatural deaths, with a view of determining whether they were caused by criminal actions of others and to *apprehend and bring the responsible persons to trial.* In the discharge of these duties he is only called upon to use *reasonably sound discretion*". (Italics supplied). Again, in Miller v. Cambria County, 29 Pa. Superior Ct. 166 (1905), it was said on page 168: "The 'violence and undue means'. which gives jurisdiction to a coroner has reference to unlawful conduct of another from which death resulted. Where it is evident that death did not result from such cause, neither inquest nor a view of the body is necessary. If there are no suspicious circumstances attending the death, the coroner has no duty to perform. He is accountable for the proper exercise of his discretion, and if he act[s] without sufficient cause the the county is not liable for his fees". See also Andrews Petition, 39 D. & C. 2d 358, 14 Cumb. 124 (1964), and 18 C. J. S., p. 295.

Having now concluded that the coroner's duty is discretionary with the coroner, we must examine plaintiff's complaint to see if sufficient facts have been pleaded to show that the coroner had any basis whatsoever to exercise his discretion; and if he had such a basis, that he arbitrarily refused to exercise his discretion. It is our opinion that the coroner would not be justified in exercising his discretion in the absence of some evidence of criminal act or criminal neglect on the part of one other than decedent as the cause of death: Commonwealth ex rel. Czako v. Maroney, supra, and Miller v. Cambria County, supra. Here, plaintiff's complaint is completely devoid of any refer-

ence to such criminal act or criminal neglect as the cause of death of Hollenbaugh. On the contrary, assuming the allegations of the complaint to be true for the purpose of our discussion, it is obvious that the killing of Hollenbaugh was anything but "criminal" or that it was due to unlawful conduct of another. Plaintiff's complaint seems to be concerned with "who" caused the death, rather than "what". We believe that first a criminal cause of death must be suspected and that the identity of the killer comes thereafter. Mandamus may not be used to compel the exercise of the discretionary power in a certain manner or to arrive at a certain decision: Taylor v. Abernathy, 422 Pa. 629 (1966).

Since we have concluded that there was no mandatory duty on the part of defendant and that there are no facts in the complaint which would provide a basis for the coroner to exercise his discretionary duty, we must then conclude that plaintiff has failed to state a cause of action.

And now, February 16, 1967, defendant's motion to strike is sustained. Plaintiff is granted 20 days in which to amend his complaint. An exception to this order is noted on behalf of plaintiff.