## Nader v. Hughes

*Donald E. Lewis,* for plaintiff.
*John F. Spataro,* for defendant.

MILLER, P.J., March 31, 1993—The court raised sua sponte, and now resolves, the question of whether or

not the plaintiff is an aggrieved party or otherwise had standing to bring this mandamus action.

After jury selection, the court held a second pretrial conference to discuss and resolve issues and raised the question we now face.[1] The trial did not commence. On our own we continued the case generally to give the parties a short period of time to submit briefs on this issue. We believe that the standing issue should be resolved now before an expensive trial.

## BACKGROUND

Mark Nader died as the result of a gunshot wound on March 8, 1987. The death was investigated by the Pennsylvania State Police, particularly Trooper Scott Patterson. The defendant, as coroner, did not visit the scene where the shooting occurred, nor did he interview the one eyewitness to the event. Patterson did those things.

The coroner did order an autopsy by the Allegheny County Coroner's Department and did seek certain ballistic opinions from the State Police Crime Lab in Harrisburg. The coroner reviewed the criminal investigation performed by the Pennsylvania State Police (including eyewitness statements), met with John Dawson, the district attorney, and talked with Trooper Patterson on a number of occasions. In early April 1987, the coroner concluded that death was caused by a self-inflicted gunshot wound, that is, a suicide. He made that final when he certified the cause of death on April 16, 1987.[2]

Sometime thereafter, Frank Nader (plaintiff), who is Mark Nader's father, disturbed with the coroner's conclusion, hired an attorney. Plaintiff, or someone on his

1. Defendant did file a motion for summary judgment on February 17, 1992, after we raised the standing issue.

2. 16 P.S. §1244.

behalf, hired private investigators. At some point, plaintiff, through his attorney and investigators, wrote to the coroner and district attorney. Plaintiff then met with them in an effort to encourage the coroner to change his conclusion and conduct an inquest.

The coroner maintains that he made a reasonable investigation into the cause of death even though there are some things he did not do. Plaintiff disagrees with the coroner's conclusion and filed his complaint on September 4, 1990. He filed suit on behalf of himself and the estate of Mark Nader. Because plaintiff has not averred in the complaint how Mark Nader's estate is affected by the coroner's action, we will assume that Frank Nader only filed suit on behalf of himself.

The plaintiff's complaint alleges that the coroner abused his "authority and discretion," thus entitling the plaintiff to mandamus (see paragraphs 18 and 22 of the complaint). The injury to the plaintiff that he believes was caused by the coroner's action is set forth in paragraph 20 of the complaint as follows:

"The plaintiff, Frank Nader, is the father of the deceased, and has suffered incalculable stress and mental anguish over the death of his son and over what he believes to be the refusal of the district attorney and the coroner's office to act responsibly upon the evidence in the matter of Mark Nader's death. Further, the plaintiff has an intense interest, both religious (both the plaintiff and the deceased are Roman Catholics) and social, in clearing the stigma of suicide from the family and the deceased."

The coroner filed a motion for summary judgment which we denied on February 24, 1992, since we believe there is a substantial issue of material fact, that is, whether

or not the coroner acted in an arbitrary or capricious fashion.[3] Unfortunately, the question of standing was not directly raised by anyone at that time, including the court.

## DISCUSSION

### Mandamus

"Mandamus is an extraordinary remedy which is available to compel the performance of a ministerial act or mandatory duty where there is (1) a clear legal right in the plaintiff; (2) a corresponding duty in the defendant; and (3) a lack of any other adequate, appropriate and specific remedy." 18 Standard Pennsylvania Practice 2d, *Mandamus*, §99:1.

Mandamus will not lie to compel the performance of a discretionary act unless the public official's failure to exercise discretion is "arbitrary, fraudulent or based on an erroneous view of the law." In addition, the plaintiff must establish a clear right to relief and the lack of any other remedy at law. *Young Men & Women's Hebrew Ass'n v. Monroeville Borough Council*, 494 Pa. 283, 431 A.2d 260 (1987); *Germantown Business Ass'n v. City of Philadelphia*, 111 Pa. Commw. 503, 534 A.2d 553 (1987); *Carino v. Armstrong*, 79 Pa. Commw. 237, 468 A.2d 1205 (1983).

---

3. We recognize that whether or not the coroner acted arbitrarily may be a mixed question of law and fact. Because the coroner's actions have a fact component, summary judgment could not be entered.

## Standing

A plaintiff has standing when he has suffered a judicially cognizable injury that is the result of the defendant's actions. "[T]he core of the concept of standing is that a person who is not adversely affected in any way by the matter he seeks to challenge is not aggrieved thereby and has no right to obtain a judicial resolution of his challenge." *Game Commission v. Commonwealth, Dept. of Environmental Resources,* 521 Pa. 121, 127, 555 A.2d 812, 815 (1989).

The type of injury which gives a plaintiff standing was defined by our Supreme Court in *William Penn Parking Garage Inc. v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975).

"[A] person who is not adversely affected in any way by the matter he seeks to challenge is not 'aggrieved' thereby and has no standing to obtain a judicial resolution of his challenge. In particular, it is not sufficient for the person claiming to be 'aggrieved' to assert the common interest of all citizens in procuring obedience to the law." *William Penn Parking Garage, supra,* 464 Pa. at 192, 346 A.2d at 280-81.

To determine whether a plaintiff is aggrieved, or stated in another way, has suffered a judicially cognizable injury, a court must find that the interest asserted is substantial, direct, and an immediate consequence of the challenged action. The plaintiff's interest does not have to be pecuniary, but it must be substantial:

"[T]he requirement of a 'substantial' interest simply means that the individual's interest must have substance— there must be some discernible adverse affect to some interest other than the abstract interest of all citizens in having others comply with the law."

In addition, the plaintiff must show a sufficiently close causal connection between the challenged action and the injury:

"The requirement that an interest be direct simply means that the person claiming to be aggrieved must show causation of the harm to his interest by the matter of which he complains." Finally, the injury must be an "immediate and not a remote consequence" of the challenged action. *William Penn,* 464 Pa. at 193, 195, 346 A.2d at 282-83. See *Sprague v. Casey,* 520 Pa. 38, 550 A.2d 184 (1988), *Bahian v. Commonwealth, Dept. of Public Welfare,* 89 Pa. Commw. 644, 493 A.2d 803 (1985).

We note that standing is an amorphous concept and that there is no bright-line rule to determine the sufficiency of the plaintiff's interest once he has demonstrated an injury that is distinct from that suffered by the general public. *Pennsylvania Tavern Ass'n v. Commonwealth, Liquor Control Board,* 472 Pa. 567, 577-78, 372 A.2d 1187, 1192 (1977) (Roberts, J., concurring.)

Whether a private party has standing to bring a mandamus action to compel a public official to take official action was addressed by our Supreme Court in *Dombrowski v. City of Philadelphia,* 431 Pa. 199, 245 A.2d 238 (1968). The court held that a "private litigant may maintain a mandamus action to enforce a public duty when that plaintiff has an individual and beneficial interest in the litigation independent of that which is held by the public at large." As indicated by the cases cited in *Dombrowski,* the beneficial interest does not have to be a contractual relationship or a vested right. *Dombrowski,* 431 Pa. at 204, 245 A.2d at 241. The court found that the plaintiff, a city employee whose retirement benefits had vested, had a beneficial interest, independent from the public at large, in the city making sufficient appropriations to the retirement system to make it ac-

tuarially sound. *Id.* at 210, 245 A.2d at 244. See *Germantown Business Ass'n v. Philadelphia,* 111 Pa. Commw. 503, 505-06, 534 A.2d 553, 554 (1987).

We believe that there is no substantial difference between the standing requirements articulated by the court in *William Penn* and *Dombrowski.* In both cases, the court required the plaintiff to allege a distinct injury that is directly caused by the defendant's actions.

### Court's Power to Raise Standing

The plaintiff objects to this court raising the issue of standing sua sponte after the jury was empaneled. Mandamus is an extraordinary remedy that can be granted only when the plaintiff has a clear right to relief. "One who sues in mandamus must demonstrate an immediate and complete legal right to the demanded action. Moreover, mandamus should never be invoked in a doubtful case." *Carino v. Armstrong,* 79 Pa. Commw. 242, 244, 468 A.2d 1201, 1203 (1983).

A plaintiff does not possess a clear right to relief unless he alleges all of the elements which are necessary to state a cause of action in mandamus. A plaintiff possessing a substantial and beneficial interest in the public official's action is a necessary element in a mandamus action. *Dombrowski, supra,* 431 Pa. at 204-07, 245 A.2d at 241-43; *Germantown Business Ass'n, supra,* 111 Pa. Commw. at 506, 534 A.2d at 554; *Bruhin v. Kassab,* 12 Pa. Commw. 455, 458-59, 317 A.2d 58, 60 (1974).

The Rules of Civil Procedure recognize that the plaintiff must allege a substantial and beneficial interest in order to state a valid cause of action. Pa.R.C.P. 1095(4) provides that in a mandamus action "[t]he plaintiff shall set forth in the complaint ... the interest of the plaintiff in the result...." Therefore, a court can raise the question of standing when a plaintiff's interest is not apparent.

*Carino, supra,* 79 Pa. Commw. at 248-49, 468 A.2d at 1205. The plaintiff's interest in our case is not apparent to us and we decide if he has standing.

### Plaintiff's Standing

Does the plaintiff in our case have a substantial, direct and immediate interest in the coroner holding an inquest? To answer this question, we must consider the function of the coroner and the purposes served by an inquest. The statute covering the coroner's duties changed in 1991. Act of November 29, 1990 P.L. 602, no. 152. Since Mark Nader's death occurred in 1987 and the coroner's decision was made prior to the amendments, the prior law applies.

A coroner is directed to investigate certain types of deaths, including any sudden, violent, or suspicious death. Act of 1955, August 9, P.L. 323, §1237, 16 P.S. §1237. Section 1238 of the Act of 1955 directs the coroner to conduct an inquest if he is not satisfied that the death resulted from natural causes or suicide. The coroner's powers to investigate suspicious deaths make him a part of the Commonwealth's criminal investigation team. *Commonwealth v. Anderson,* 253 Pa. Super. 334, 346-47, 385 A.2d 365, 371-72 (1978). Section 1242 directs the coroner to consult and advise with the district attorney so far as may be practical. He protects public interests, not private interests.

The purpose of the inquest is to assist the Commonwealth in the investigation of possible criminal activity. "At the inquest the coroner's duty shall be to ascertain the cause of death and whether any person other than the deceased was criminally responsible therefore by act or neglect, and if so, the identity of the person and any further evidence and witnesses regarding the crime." Section 1238. Neither police investigation of a possible homi-

cide or the district attorney's authority to prosecute a case is predicated on the coroner having conducted an inquest. In *Commonwealth ex rel. Czako v. Maroney,* 412 Pa. 448, 194 A.2d 867 (1963), the court held that a defendant was not entitled to have an inquest performed upon the victim prior to his indictment. An inquest is required to be held only where the circumstances of death are suspicious and problematical. The deceased's cause of death was clearly murder. Moreover, the court recognized the limited purpose of a coroner's jury:

"At common law, the verdict of a coroner's jury could be used for prosecuting the offenders without and instead of an indictment by a grand jury. However, in modern times in the United States, the finding of a coroner's jury is merely advisory to the public authority charged with the administration of the criminal law. It is only a preliminary investigation and not a trial on the merits. Its finding is binding on no one as a judgment. Its main purpose is to ascertain, if possible, if the death [was] due to other than natural causes." *Maroney* at 450, 194 A.2d at 868. See *Commonwealth v. Jennings,* 442 Pa. 18, 274 A.2d 767 (1971); *Andrews Petition,* 39 D.&C.2d 358 (1964).

The findings of a coroner can have no impact in a civil action to recover insurance proceeds, nor do the coroner's findings impact upon his relatives' personal rights. In *Bair v. Fourhman,* 95 York Leg. Rec. 1 (1981), the coroner had first ruled that the plaintiff's son's death was accidental and then later decided that it was a suicide and issued another death certificate reflecting his new decision. The plaintiff filed suit requesting that the coroner be ordered to reinstate the first death certificate or that he be given a due process hearing pursuant to section 4 of the Local Agency Law.[4]

---

4. 42 Pa.C.S. §553.

Two injuries were alleged by the plaintiff in his complaint. One alleged injury was to his property rights because he believed that the coroner's finding impaired his ability to collect the proceeds of certain life insurance policies on his son's life. The other injury was the personal grief caused by the coroner's finding that his son committed suicide because the plaintiff's son was a Mormon and suicide is contrary to the teachings of the Mormon faith.

The court found that the plaintiff was not entitled to a due process hearing because the coroner's decision was not an adjudication. The coroner's decision did not affect the plaintiff's property or personal rights. The court rejected the father's contention that his ability to collect on the insurance policies was impaired because it found that the coroner's decision could not be used in a suit to collect on an insurance policy.

The court also found that the plaintiff's personal grief did not affect his personal rights.

"[W]hile it is understandable that, because of religious reasons, the petitioner is distressed by the finding of suicide, given the fact, as we have indicated, that the coroner in the course of her investigation has the authority to make such a finding, and given the further fact that the finding is advisory only and not binding on anyone, we remain of the opinion that the finding does not affect the petitioner's personal or property rights, privileges, immunities, duties, liabilities or obligations and does not therefore, qualify as an adjudication under the Local Agency Law." *Bair* at 2.

The York County Common Pleas opinion was adopted by the Commonwealth Court in *Bair v. Fourhman*, 65 Pa. Commw. 173, 442 A.2d 35 (1982). The Commonwealth Court specifically agreed with the county court

that the coroner's determination could not be used in a suit to collect on an insurance policy.

Turning to our case, the plaintiff's interest in the action is to relieve his stress and anguish over what he believes was a wrong decision made by the coroner and to clear the stigma of suicide from the family and the deceased. Plaintiff essentially has alleged a psychic injury. *Fourhman* indicates that the plaintiff's psychic injury does not qualify as a substantial interest. The plaintiff is certainly more than an ideological plaintiff. See *Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). The cause of his son's death is of more interest to him than the general public. One of the most unbearable experiences in one's life is the death of a child. Nevertheless, the coroner's finding is not binding on anybody and the plaintiff has not alleged how the supposed stigma of suicide has affected any of his tangible interests. We also note that the district attorney already has investigated this case and determined that Mark Nader's death was caused by suicide. (See deposition of John Dawson.)

We also find that the casual connection between the plaintiff's psychic injury and the coroner's refusal to hold an inquest to be too tenuous to qualify the plaintiff's interest as direct and immediate. The plaintiff presumably will obtain peace of mind if the coroner holds an inquest *and then* determines that his son's death was caused by something other than suicide. Although this court can order the coroner to exercise his discretion and conduct an inquest, we cannot direct the coroner to exercise his discretion in a certain manner and find that plaintiff's son's death was not a suicide. *Marvin v. Monroe County,* 154 Pa. Super. 75, 35 A.2d 781 (1944); *Paczkoskie v. Ulrich,* 41 Northum. L.J. 53, 56 (1969); *Rubeck v. McLucas,* 42 D.&C.2d 86, 95 (1967). The relief requested will not redress the injury alleged. As a result, the coroner

may very well decide that Mark Nader's death was the result of a suicide even after he holds an inquest. The scope of inquiry in this case centers around whether or not there was an arbitrary, capricious or bad-faith abuse of the coroner's discretion. The most we can do is require an inquest. We cannot give the plaintiff exactly what he wants, that is, a change in the coroner's conclusion. We therefore find that he does not have a distinct injury that was directly caused by the defendant's actions. Furthermore, we find that the injury the plaintiff suffered, if he in fact did suffer any injury recognized by the law, cannot be redressed because of the limited scope of the relief this court can give in this mandamus action.

The plaintiff has not alleged that any insurance policies are at stake, but if they were, the Commonwealth Court's decision in *Bair* indicates that the coroner's conclusions could not be used in a suit to collect on the policies. Because the plaintiff does not have a substantial, direct and immediate interest in the coroner's conclusion, we find that the plaintiff lacks standing to maintain this suit.